THE PHŒNIX FIRE INSURANCE COMPANY *v.* HOFFHEIMER, BROTHERS & Co.

1. REFORMATION OF POLICY OF INSURANCE — JURISDICTION OF CHANCERY — CASE IN JUDGMENT. — Where a merchant, doing business as agent, applied for a policy of insurance against fire, paying the premium, and desiring the policy to be made in his favor as agent, but by accident or mistake the policy was filled up in his name, without the addition of words, "as agent," or other words of like import: *Held*, on the bill exhibited by the persons for whom the party was agent, that a court of chancery had power to reform the policy, and to decree its payment to those for whom it should have been made a security, by its terms, at the time of issuance.

2. SAME — CAUTION TO BE EXERCISED. — A court should be extremely cautious in the exercise of its undoubted power to reform a contract. It should withhold its aid, where the mistake is not made out by the clearest evidence.

3. EVIDENCE — TEST OF SUFFICIENCY. — The test of the sufficiency of evidence in such case is its capacity to satisfy the mind of the court.

4. PAROL EVIDENCE ADMISSIBLE TO SHOW MISTAKE. — Parol evidence is admissible to show mistake in an instrument of writing, even where the fact of mistake is denied by the answer.

APPEAL from chancery court of Warren county. HILL, Chancellor.

*Harris & Harris*, for appellants.

The sole questions are those presented on the assignment of errors: 1st. Under the issue thus made and the evidence responsive to that issue, could the court below decree a reformation of the policy? 2d. Could the court below decree a payment of the amount insured by the policy?

In considering the first error assigned, it may be well to notice the right given by law, and recognized by all the courts, to insurance companies to restrict and limit their contracts and liabilities by provisions annexed to their policies like those exhibited in the policy in this case. The great questions of public policy underlying these contracts of insurance have controlled the courts, in permitting a limitation to be fixed to the person insured, to the property insured, to the nature of the suit, the ownership, legal title, and possession of the property insured. 1 Bell's Comm.

540 ; 3 Kent, 371 ; Shelton v. Mutual Fire Insurance Company, 4 Mass. 230 ; 4 Denio (N. Y.), 301.

Such restrictions are allowed generally in policies of insurance, "especially policies against fire, as such policies would become extremely hazardous by reasons of the temptation they hold out to the nefarious commission of willful fire or arson, which is necessarily attended with peril of the most deplorable kind to a whole community."

This bill now proposes to take from the appellants a most vital and important right necessary to their own protection and the protection of the whole community; a right most jealously given them ; by changing the entire nature and character of the policy upon the testimony of Sartorius alone.

While it is undeniable that courts of equity can reform policies of insurance as they may other contracts, yet such reformation can only be made upon the most clear and positive evidence. Angell on Insurance, 61, 62, and notes.

"A court of equity ought to withhold its aid when the mistake is not made out by the clearest evidence according to the understanding of both of the parties and upon testimony entirely exact and satisfactory." United States v. Monroe, 5 Mason, 522 ; Kennedy v. Umbraugh, Wright, 327 ; Lyman v. Little, 15 Vt. 526 ; Preston . v. Whitcomb, 17 ib. 183.

"Equity will not lend its aid to amend a written contract (policy of insurance) where the alleged mistake is denied by the answer, without the clearest and most satisfactory proof of the mistake and of the real agreement." Lyman v. United Ins. Co., 2 Johns. Ch. 680. "Nor unless the contract be so amended as to conform to the understanding of both parties." S. C., 17 Johns. Ch. 323. Also Watkins v. Stockell, 6 Har. & J. 435 ; 2 How. (Miss.) 201 ; J. J. Marsh. 432 ; Nabors v. Lock, 24 Miss. 44 ; Kilpatrick v. Lock, 23 ib. 124 ; Mosbey v. Wall, ib. 81 ; Cooper v. Farmers' Mutual Ins. Co., 50 Denio, 299 ; Teason v. Atlantic Mutual Ins. Co., 40 Miss. 33 ; Story's Eq. Jur., § 153.

The statement Sartorius makes in the bill is entirely covered with suspicion. It is not free from doubt, uncertainty; it is not clear, accurate, positive. His testimony is accompanied by the same characteristics. It is not, in fact, the case required to be made by the authorities we have just cited. It is not, in the language of those eminent judges, Story and Kent, in the cases cited, a case of "the clearest and most satisfactory proof of mistake and of the real agreement."

The witnesses, except Sartorius and Fairchild, know nothing of any agreement between the parties different from what the policy itself contains. The policy itself speaks with Fairchild, the circumstances testify with Fairchild and against Sartorius, and we invoke the well-established rules on this subject requiring the mistake to be made out in the most clear and decided manner. 2 Johns. Ch. 630.

But the answer of Fairchild is conclusive as to the real agreement; and even if Sartorius appears free from suspicion in this case of so peculiar and tender a nature, Fairchild's answer and deposition must outweigh Sartorius' bill and deposition.

In view, then, of these authorities and the circumstances surrounding the case, and in view of the issue under the evidence responsive to that issue, could the court below decree a reformation of the policy?

If so, what safeguard would ever be thrown around written contracts? If so, what safety would there be to insurance agents in restricting the limit of their liability to persons, property and character? If so, what protection would policies of insurance afford to the insurer and insured, or to the community, the property-holders? Of what earthly value could such a contract be made, as a matter of safety and protection?

On the contrary, if without the clearest and most satisfactory, undeniable and unimpeachable testimony, thoroughly and accurately establishing the mistake, policies of insurance, after fire, can be readily altered, changed or

" reformed," how wide would the door of temptation to crime be thrown open, and of how little value would be the protection which well-established decisions have thrown around insured and insurer ?

The scope of the bill is the reformation of the policy; the specific object and purpose of the bill is to reform the policy; the tenor and effect, the allegations of the bill are directed to a reformation of the policy; the issue made by the pleading is that of a reformation of the policy; the proof has alone been responsive to that issue; the complainants in the bill have summoned the appellants to answer alone upon the reformation of the policy, and the answer has been made to that end. In rendering its decree, therefore, for the payment of the amount named, the court has declared a fact which is not in issue by the bill and answer.

It is manifest that the bill was filed to keep certain causes on the docket of the circuit court of Warren county until the policies had been reformed in such a manner that the appellees could be made parties thereto, and upon the issue of reformation of the policy alone ought the court below to have passed a decree for the payment of money ? Such a decree was outside the issue made, and, of course, was a decree the appellants were not prepared to meet. It was, therefore, error for the court below to decree what was not within the general scope of the bill. Livingston v. Van Rensselaer, 1 Wend. 63 ; Crockett v. Lee, 2 Wheat. 522 ; Stuart v. Mech. & Farmers' Bank, 19 Johns. 496 ; Smith v. Smith, 1 Ired. Ch. 83 ; Langdon v. Roane, 6 Ala. 518 ; Dickinson v. Morgan, 8 Dana, 130 ; Handly v. Young, 4 Bibb, 376 ; Bulard v. Phillips, 3 Ala. 218 ; 2 Ired. Ch. 113, 216 ; 1 B. Monr. 216.

The prayer of the bill is for the specific reformation of the policy and the payment of the amount insured, and for general relief. And in such case no other relief could be granted inconsistent with the specific relief prayed. Pleasants v. Glasscock, 1 Smedes & Marsh. Ch. 17 ; Peck v. Peck,

9 Yerg. 301; Rhodes v. Halleday, 6 Murf. 251; Wilkin
v. Wilkin, 1 Johns. Ch. 111 ; Drover v. Drover, 5 Porter, 9.
The decree thus rendered for the payment of money, not in
issue·by the bill, cuts the appellants off from any ground
of defense they have against the appellee.   On the policy, if
reformed, they may have ever so perfect a defense against
the questions of loss or no loss, against the questions of
damages, against the issues involved in the suits at law, yet
by this decree the defense is barred.   This bill prays that
the suit at law may be kept open.   Although manifestly on
the face of the bill itself, it seems the appellees could never
recover at law; yet although the appellants could recover
in these suits, still they are debarred, virtually debarred,
from the recovery until a court of equity shall decree the
policy reformed ; would it be just and equitable, under this
state of facts, to close the court of law ?   to decree the pay-
ment of the amount now actually in controversy in a court
of law, and cut off the appellants from defenses on the ques-
tions involved in these suits ?   But, upon this point, see the
conclusion arrived at in Oliver v. Mut. Com. Ins. Co., 2 Cur-
tis, 277.   There, although the policy was declared reformed,
still the court refused to decree the payment of the amount
insured, as the defendant in that case had the same defenses
the defendants here have ; and the court declined to cut
them off from their defense in a court of law.   7 Ves. 211;
15 ib. 516 ; 4 Bro. Ch. 514; 3 Jeremy's Eq. Juris. 432 ;
2 Madd. 106 ; 1 Young & Coll. 559.

It is not apparent from the evidence that Sartorius was
agent for Hoffheimer Brothers & Co., in effecting this insur-
ance.   It is not apparent from any agreement between Fair-
child and Sartorius, that Sartorius, as agent, had a right to
the policy ; and there is such a conflict in this case as
will preclude a court of equity, under all the decisions,
from touching the policy.

The circumstances surrounding Sartorius are almost over-
whelming.   He renews the policies; he keeps them on
hand ; he pays the premiums ; he proves the loss by fire ;

he makes three different affidavits as to amount, loss and damage, and claims damages in his own name ; he employs his counsel, institutes suits in his own name, and not until he is a bankrupt does he begin to assert his assumed ·character of agent.

Besides this, Fairchild, a disinterested witness, answers and deposes fully and fairly, and renders a direct and positive conflict in the evidence upon the point at issue, viz. : the policy itself, entirely unanswerable, so positive and direct that the decision in 2 Curtis could not be made to apply to this case under any view of it, unless we took detached and unconnected sentences, without a general view of the harmony of the whole case.

But should a different view of that case be had from the one presented by us, and if it should be now held that the case in 2 Curtis is in conflict with the great authorities we have cited, we can only point to the current of opinion throughout the United States on this subject, and say it is overwhelmed by the weight of opinion and authority. Ex'rs. of Getman v. Beardsley, 2 Johns. Ch. 272 ; Hinkle v. Royal Ins. Co., 1 Ves. 312 ; Davis v. Simonds, 1 Cox, 404 ; Townsend v. Stargrown, 6 Ves. 212 ; Woolman v. Hearn, 2 ib ; Graves v. Boston Ins. Co., 2 Cranch, 442 ; Langley v. Brown, 2 Atk. 203 ; Adams v. Robertson, 32 Ill. 45 ; Nevens v. Dunlap, 33 N. Y. 626 ; Shay v. Pettes, 35 Ill. 306 ; Bartle v. Vosbury, 3 Grant (Penn.), 277 ; Newton v. Bilyew, 30 Ill. 228 ; Gelpeke v. Blake, 15 Iowa, 387 ; Jack v. Naber, ib. 450 ; Sawyer v. Hovey, 3 All. (Mass.) 331 ; 6 R. I. 386 ; 23 N. Y. (9 Smith) 357 ; 17 Md. 361 ; 13 Wis. 355, 458.

Thus throughout the union and without exception, as far as we have been able to continue the inquiry, all the authorities hold that a court of equity will not touch a written contract, "unless the evidence be clear, of the most convincing character, and wholly unimpeachable."

If the case in 2 Curtis can be used in any other way than authorities generally go, it can only be by doubtful

construction of the text, by detached and unconnected sentences, without a view of the whole case. For, when we attempt to apply that decision here, we find there was no conflict in the evidence in that case, while the evidence is wholly of irreconcilable elements here.

Before a court of equity will touch a case of this character, it must be obvious that the mistake complained of was a mutual mistake. It must not be a one sided mistake, but both parties must have made it. It cannot be otherwise. The case made by 2 Curtis is that case; the bill alleges the mutuality of the mistake, and that the insurance company there intended and designed to insure Oliver. Is that the case here? Does the bill allege, that in this case there is any pretext anywhere that there was a mutual mistake? But such must be the case. Schelliger v. Hopple, 3 Grant (Penn.), 154.

Now this is the difference between this case and the case in 2 Curtis; there the bill alleges the mutual mistake, and there the evidence established it in the most conclusive manner. Here, therefore, the case in 2 Curtis is reconcilable with the opinions of the great chancellors; and the view assumed by the appellees is irreconcilable with the current of opinion. Oliver was justly entitled to have the policy reformed because the court was satisfied, from force of positive and uncontradictory evidence, and the natural deductions flowing therefrom, that there had been a mutual mistake. Here the appellees are not entitled to have the policy changed in one single line or mode, because the evidence is not clear, positive, uncontradicted, that there is a mutual mistake.

For at the conclusion of the case, as at the beginning, the case is not clear, satisfactory, convincing, uncontradictory, that Fairchild and Sartorius made a mutual mistake in not having the policy speak differently from what it now speaks, yet both Fairchild and Sartorius mutually agreeing that it should speak as it is sought to be made to speak by this bill! To this point the court should be brought at the

end of the case by the clearest and most satisfactory evidence beyond contradiction, or else written contracts are of little value, and the courts have shielded them to little purpose.

The evidence in the cause must make the court overwhelmingly satisfied that when the policy issued, that policy, Fairchild and Sartorius all agree as the bill would now have the policy speak. But the end is conclusive that Fairchild and Sartorius do not agree, and hence the policy, as it now stands, must speak its own terms.

*Upton M. Young,* for appellees,

Contended that the policy issued by appellants does not express the previously concluded agreement between the parties to it, and is not the contract for insurance designed by both parties to be executed.

1. If the agreement for insurance does not properly express the contract previously made by Hoffheimer Brothers & Co., through their agent, P. Sartorius, and Wm. A. Fairchild, agent for the Phœnix Insurance Company, equity will reform.

2. If an agreement of insurance be made with one known to the company to be merely an agent, and nothing is said as to whose account the insurance is to be stated, the agent has a right to a policy insuring him as agent, or for whom it may concern, and this is true, whether the company knows the agent's principal or not. If the company is advised that the party applying for insurance is agent (of no matter whom), and that he is himself not the real owner of the property insured, the principle is the same, and the agent is entitled to a policy as such agent, or for whom it may concern, although the names of the principals may never have been disclosed.

3. If an agent makes a mistake in declaring the interest, equity requires it to be corrected and the policy reformed.

4. There is a distinction between the correction of a mis-

take in a written contract, and in the execution of a power; in the latter case courts interfere more willingly.

5. If a party fails, through mistake, to obtain such a policy as he is entitled to, by an existing, valid contract, equity will relieve, though the mistake arose from ignorance of law. In complete support of the theory stated, reference is asked to the case of Oliver v. the Mutual Commercial Marine Insurance Company, where the foregoing rules of insurance were observed and recognized in an able opinion delivered by Justice Curtis, then of the supreme court of the United States. 2 Curtis' U. S. C. C. 277. If appellees would have had a right to correct the mistake immediately after made (of this there can be no doubt), then it is well settled that a court of equity will grant relief whenever the mistake is discovered. "Equity relieves against a mistake, as well as against fraud, in a deed or contract in writing, and parol evidence is admissible to prove the mistake, though it is denied in the answer." Gillespie v. Moon, 2 Johns. Ch. 585. "A court of chancery has jurisdiction to correct mistakes in policies of insurance, as well as in all other written instruments." Phœnix Fire Insurance Company v. Gurnee, 1 Paige's Ch. 278. "Courts of equity will grant relief in cases of mistake in written contracts, not only when the fact of the mistake is expressly established, but also when it is fairly implied from the nature of the transaction." 1 Story's Eq. Jur. (9th ed.), § 162. Relief has been granted or refused, according to circumstances, in cases of asserted mistakes in policies of insurance, even after a loss has taken place." 1 Story's Eq. Jur. (9th ed.), § 158.

There is no error in the decree of the court below, granting the relief sought by the bill. The court having acquired jurisdiction of this case, and having corrected the mistake in the policy of insurance, did not err in entertaining the bill, for the purpose of granting full relief. It is a well-defined principle of equity, that, where a party comes into a court of chancery for relief in cases of fraud, account,

accident or mistake, and the court takes jurisdiction, it will go on and give the proper relief. "The jurisdiction having once rightfully attached, it shall be made effectual for the purpose of complete relief." 1 Story's Eq. Jur., § 64; 1 Fonblanque Eq., B. 1, ch. 1, § 3, note *f;* Middleton v. Russ, 3 Conn. 135; Jesus College v. Bloom, 3 Atk. 262, 263; Adley v. the Whitstable Co., 17 Ves. 329; Cooper's Eq. Pl. 31. The reason for the rule is to prevent expensive and unnecessary litigation.

PEYTON, C. J. :

On the 25th of May, 1868, Solomon Hoffheimer, Isaac Hoffheimer, Abram Hoffheimer, John Meyer, Max Hoffheimer and Moity Bachrach, partners in trade, domiciled and resident at Saint Louis, in the state of Missouri, negotiating under the name, firm and style of Hoffheimer Brothers & Co., filed their bill in the chancery court of Warren county against the Phœnix Insurance Company to reform a policy of insurance against fire, and to enforce the payment of the amount insured. The bill alleges that, in the month of August, 1865, complainants started a mercantile business in the city of Vicksburg, in the state of Mississippi, for the sale of liquors, tobacco, groceries and other wares and merchandise, and put the same in charge of and under the control and management of Philip Sartorius, as agent, at a fixed salary for his services in conducting said business ; that in the months of August and September in the year 1865, they supplied said Sartorious, agent, with a stock of goods, which was insured from time to time during the latter part of the year 1865 and the year 1866.

That on the 25th of September, 1865, the said Philip Sartorius, agent as aforesaid, applied to William A. Fairchild for insurance against loss and damage by fire on the goods so kept by him for sale, to the amount of $1,500, in and with the said Fairchild, as the legally constituted agent of the Etna Insurance Company, a corporation doing business in said city of Vicksburg, Mississippi, through their said

agent; that, at the time the said Sartorius applied to said
Fairchild, agent for said insurance company, he informed
said Fairchild, agent as aforesaid, that he, the said Sartorius,
held said merchandise, and was selling the same, as agent
for complainants, his principals, and owners of said mer-
chandise; that said insurance company, through said Fair-
child, their agent, on the said 25th day of September, 1865,
issued to said Sartorius, agent, a policy of insurance,
assuming a risk of $1,500 against fire on said merchándise
for the period of three months, the said Sartorius, as agent,
paying therefor the premium.   That said Fairchild was the
agent of the Etna Insurance Company, the Phœnix Insurance
Company, and the Hartford Fire Insurance Company; and
that, on the 19th of February, 1866, the first policy having
expired, the said Sartorius applied to said Fairchild, agent
of said Etna Insurance Company, for another policy of
insurance against fire, risk to the same amount, on the said
goods and merchandise, to be issued on the same day with
the former, to the said Sartorius, agent, who paid said Fair-
child therefor the premium; that, at the issuance of the
first policy, in September, 1865, the said Fairchild had
notice and full knowledge of the facts that the said goods
and merchandise were the property of complainants, that
Sartorius was their agent, and that the policy was for their
benefit, and that said first policy was, in fact, issued to said
Sartorius as agent of complainants, with the intent and for the
purpose of protecting the interests of his principals in said
goods.   That, on the 19th day of February, 1866, the said
Fairchild, agent of the said Phœnix Insurance Company,
being instructed by said Sartorius, agent, to make out the
policy, then applied for in said company, like the first one
made out by said Fairchild, agent, for said Sartorius, agent,
in the Etna Insurance Company; and, knowing that it
should be filled up so as to make the same valid and effec-
tual to cover the interests of complainants in the merchan-
dise, did at said time issue a policy, taking a risk of $1,500
on said goods and merchandise, and received from said

Sartorius, agent, the premium for the same; but, by accident or mistake, the defendants, by their agent, Fairchild, omitted and neglected to insert in said policy that P. Sartorius, agent, was insured; and that, on the 19th of May, 1866, the said policy was renewed for nine months, which would expire on the 19th of February, 1867; that, at the time the renewal was made, it was confidently relied upon and believed by said Sartorius that said policy, which was continued by said renewal, covered and protected the interests of complainants in said merchandise, which was destroyed by fire on the 23d of December, 1866.

The bill prays that said policy of insurance, and the renewal thereof, may be corrected and reformed by inserting therein that said insurance was made by P. Sartorius, agent, or of P. Sartorius, for whom it may concern, or of P. Sartorius, for account of complainants, or such other words as will cover and protect the interests of complainants in said goods, and that complainants may have the benefit of said policy of insurance, so corrected and reformed, and that the sum, so insured by said defendants, on said goods and merchandise, be paid to them, and for such other or further relief as may be consistent with the facts of the case.

The defendants in their answer deny that P. Sartorius ever notified them, or gave them any information, that the complainants were the owners of the goods insured. They admit, as stated in the bill, that said Sartorius did business "as agent," both by publication and by his sign, but deny that they ever knew that he was in reality agent of the complainants, as they supposed Sartorius adopted that mode of doing business for purposes of his own, and insist that he was the only person known to them in the transaction, and that the insurance was effected in his own name and on his own account.

Upon the final hearing of the cause on bill, answer, exhibits and proofs, the court decreed that the policy of insurance mentioned in the bill be so corrected and reformed as to express the idea that said P. Sartorius was,

by said policy, insured as agent, for and on account of complainants, so as to cover the interests of complainants in the goods insured by the policy of the defendants, and the court, having corrected and reformed said policy as aforesaid, decreed that the defendants, the Phœnix Insurance Company, pay to the complainants the sum of $1,500, with $341 25, interest on the same at 6 per cent, from the 1st day of April, 1867, to the date of this decree, and that the complainants have execution, etc.   From this decree the defendants appealed to this court, and assigned for error : 1st. It was error to decree that the policy of insurance exhibited in the bill should be altered, changed or amended, as decreed ; 2d. It was error to decree the payment of money, to be made by the appellants to the appellees, as decreed.   We will consider the errors assigned together, as they deny the right to reform the policy of insurance, and to enforce it as reformed.   The interposition of a court of chancery to correct mistakes, by ordering a proper deed to be executed, according to the true intent of the parties, is a very ancient doctrine.   If, on inquiry, it appears that the instrument does not contain what the parties intended it should, and understood that it did, it may be reformed by proof, *aliunde*, so as to make it the evidence of what was the true agreement between the parties.   It is wholly immaterial from what cause the defective execution of the intent of the parties arose.

There cannot be any doubt that a court of equity has authority to reform a contract, where there has been an omission of a material word or stipulation by mistake, And a policy of insurance is within the principle ; but a court ought to be extremely cautious in the exercise of such an authority.   It ought to withhold its aid where the mistake is not made out by the clearest evidence ; 1 Phillips on Ins. 72⁄; 2 ib. 560 ; Phœnix Fire Ins. Co. v. Gunce, 1 Paige, 278.   It would be a great defect in what Lord Eldon terms the moral jurisdiction of the court, if there was no relief for such a case.   The cases concur in

the strictness and difficulty of the proof, but still they admit it to be competent, and the only question is, does it satisfy the mind of the court?

And the doctrine is well established in this country, that equity will relieve against mistake as well as fraud, in a deed or contract in writing; and parol evidence is admissible to prove the mistake, though it is denied in the answer; and this, either where the plaintiff seeks relief, affirmatively, on the ground of mistake, or. where the defendant sets it up as a defense or to rebut an equity. Gillespie v. Moon, 2 Johns. Ch. 585; Hillman v. Wright, 9 Ind. 126; Davidson v. Greer, 3 Sneed, 384; Lambert v. Hill, 41 Me. 475; Adams v. Stevens, 49 ib. 366.

While chancery has no power to make contracts for parties, or to substitute one for another, it can and will decree that they shall reform those which they have actually made; and if the paper does not fulfill or violates their understanding it will be rectified and made to conform to it. And a court of equity will grant relief, in cases of mistake, in written agreements, not only where the fact of the mistake is expressly established, but is fairly implied from the nature of the transaction. 1 Story's Eq. Jur. 161, § 162; Wyche v. Greene, 11 Ga. 171, 172.

In the case of Tilton v. Tilton, 9 N. H. 385, tenants in common agreed to make partition pursuant to the award of referees, and executed deeds for that purpose. In the deed to the complainant, a tract of land assigned to him was omitted by mistake. The parties took possession according to their deeds. The defendant in his answer denied the mistake. The court held that the mistake should be rectified, and that a specific performance of the contract, as to the tract omitted, should be decreed. But in such cases the mistake must be made out in the most clear and decided manner, and to the entire satisfaction of the court; and the proofs must be clear and convincing when the mistake is denied in the answer.

In the case of Mosby v. Watt, 23 Miss. 81, it was held that a bill would lie to correct a mistake in a written contract, and enforce a specific performance of the contract as corrected. But to authorize a court of equity to reform and enforce the contract, the evidence of the alleged mistake should be free from doubt. And in the case of Oliver v. M. C. Marine Ins. Co., 2 Curtis, 291, the court says: "If one who applies for insurance makes known that he is an agent only, and the company agrees to effect the insurance, it is a necessary implication that such words shall be inserted in the policy, as are usually inserted in such cases, and as are necessary to make a binding contract. It is to be presumed that the underwriters intend to earn their premium, and therefore that they expect and desire that the insurance should attach upon some interest, and understand and agree, if a known agent applies for insurance, that the formula, usually inserted when an agent obtains insurance, and which is necessary to the assumption of the risk, shall be in the policy ; when it is drawn, I think it may safely be laid down, that when a contract is made for a policy, whatever clause is usually inserted in policies, by reason of a given state of facts, and which it is necessary to insert to adapt the policy to that state of facts, both parties will be understood as agreeing to have inserted, if they are both apprised of that state of facts, and contract in reference to it."

That it is usual and necessary, to insert in policies of insurance effected by agents in their own names a declaration that they are insured as agents, or for whom it may concern, or some equivalent words, or to declare specially on whose account the insurance is made, will hardly be controverted.  In the case under consideration, it is admitted by the defendants in the court below by their answer, that Sartorius did business in Vicksburg as "agent," both by publication and by his sign.  William A. Fairchilds, agent for the Phœnix Insurance Company, states in his testimony that on the 25th of September, 1865, the Etna Insurance Company,

through him as their agent, insured P. Sartorius as agent to the amount of $1,500. Sartorius, in his testimony, states that, when he took out first policy of insurance as above stated, on the 25th of September, 1865, he informed said Fairchild that he was doing business for the Hoffheimer Brothers & Co., of St. Louis, as their agent, and as the first policy was issued to him as their agent, he requested Fairchild to make out the subsequent policies of insurance which were issued to him as the first was made out, and taking it for granted that Fairchild had done so, he never examined them until after the fire. This was but a reasonable confidence, which he reposed in Mr. Fairchild, who, if we are to judge from his testimony, does not entertain a very exalted opinion of the integrity of Mr. Sartorius. There can be no doubt that Mr. Fairchild had seen the sign and the advertisements of Mr. Sartorius, as agent ; but he may have supposed, as we may infer from his testimony, that this mode of advertising was adopted merely "to cover up his goods."

W. T. Page, who was an agent for several insurance companies at Vicksburg, at the time the policy of insurance was issued, states in his testimony, that if the applicant for insurance makes known to the insurance agent, that he is selling goods as agent, it would be the duty of the insurance agent to fill up the policy to the applicant as agent.

It is very clear from the testimony, that Sartorius was doing business as agent when these policies of insurance were taken out, and that by the first of them P. Sartorius was insured as agent, and there is no perceivable reason why the word "agent" should have been omitted in the subsequent policies of insurance. There is no evidence of a change of circumstances between the issuance of the first and the subsequent policies which would authorize the underwriters to believe that there was a change of the ownership, in the interim, of the property to be insured. We are entirely satisfied that the policy sought to be corrected

and reformed was intended by the parties to insure P. Sartorius, agent, and, therefore, there is no error in the decree of the court below in this respect. If the court has a competent jurisdiction, as we have seen it has, to correct such mistakes, the agreement, when corrected, and made to speak the real sense of the parties, ought to be enforced as well as any other agreement, perfect in the first instance. It ought to have the same efficacy and be entitled to the same protection when made accurate under the decree of the court as when made accurate by the act of the parties.

*The decree is affirmed.*

Mr. Justice SIMRALL not sitting.