GENERAL BONDING & CASUALTY INS. CO. v. BECKVILLE INDEPENDENT SCHOOL DIST. et al.

(Court of Civil Appeals of Texas. Texarkana. April 22, 1913. Rehearing Denied May 1, 1913.)

1. PRINCIPAL AND SURETY (§ 101*) — DISCHARGE OF SURETY—ALTERATION OF CONTRACT.

Where the terms of a contract, the performance of which is guaranteed by a surety, are materially altered after its execution, the surety is released unless he consents to the change.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 169–180; Dec. Dig. § 101.*]

2. PRINCIPAL AND SURETY (§ 159*) — DISCHARGE OF SURETY—BURDEN OF PROOF.

A surety, relying on the defense of alteration of contract, has the burden of proving it.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 428–435; Dec. Dig. § 159.*]

3. PRINCIPAL AND SURETY (§ 100*) — DISCHARGE OF SURETY—ALTERATION OF CONTRACT.

As respects a surety on a building contractor's bond, a provision of a contract for the construction of a schoolhouse that a supervising architect be employed was not altered by a member of the school board, who was a practical contractor, though not a professional architect, agreeing with the other members to act as such supervisor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. § 100.*]

4. PRINCIPAL AND SURETY (§ 100*)—ALTERATION OF CONTRACT—VERBAL AGREEMENT.

Where, in a building contract, there is nothing making it binding on the owner to employ a certain person, named by inference as the supervising architect, a verbal agreement that such person is not to be so employed, even if made without the consent of the surety on the contractor's bond, is not sufficient to release the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. § 100.*]

5. PRINCIPAL AND AGENT (§ 177*) — NOTICE—ALTERATION OF CONTRACT—SURETY.

Where, in the construction of a schoolhouse, the surety company signing the contractor's bond employed a member of the school board to procure the bond, which he did, and for which he was paid his commission, an alteration of the contract, assented to by the board at a time when the member was agent and before the signing of the bond by the company, did not release the surety, as notice to the member was notice to the company.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Action by the Beckville Independent School District and others against the General Bonding & Casualty Insurance Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

H. N. Nelson, of Carthage, and W. M. Nold, of Dallas, for appellant. T. P. Young and Cary Abney, both of Marshall, for appellees.

HODGES, J. On the 31st day of August, 1912, the Beckville Independent School District filed this suit against J. A. Heermans and the General Bonding & Casualty Insurance Company on a contractor's bond, seeking to recover the sum of $2,500 as damages. The petition alleges that in July, 1911, Heermans entered into a written contract with the plaintiff to furnish all the material and construct in the town of Beckville a two-story brick school building; the work to be finished within 4 months and 20 days, or before December 21, 1911. The house was to be built according to plans and specifications prepared and furnished by A. O. Watson, an architect. The consideration to be paid was $5,850. The contract provided that Heermans should give a bond in the sum of $2,500, conditioned for the completion of the building in accordance with his contract; and the plans and specifications were made a part thereof. It is further alleged that the bond was executed by Heermans with the General Bonding & Casualty Insurance Company as surety, and was accepted and approved by the plaintiff's board of

trustees; that Heermans entered upon the performance of his contract, but failed to complete the building according to its terms; that he had received of the consideration agreed upon the sum of $5,757.90, all of which is set out in detail. Copies of the contract and the specifications are attached as exhibits to the petition. It is also alleged that, by reason of the failure of Heermans to complete the building and perform his contract, the plaintiff had been damaged in the amount sued for, and for which it asked judgment against both Heermans and the bonding company.

On September 23, 1912, the bonding company filed its amended original answer containing general and special exceptions and a general denial. It was also specially pleaded that this defendant was only a surety on the bond, and that the plaintiff had in violation thereof paid Heermans more than 80 per cent. of the purchase price without the surety's consent; that the building contract had been materially changed after its execution, without defendant's consent, in that Heermans was given more time for the completion of the building; that the contract under which Heermans undertook to erect the building was another and different contract from that to which the defendant had become a party. To this answer the appellees replied by a lengthy supplemental petition, which, after a general denial of all the facts set out by the bonding company in its original answer, pleaded certain provisions of the contract which authorized the school board in its discretion to pay out more than 80 per cent. of the contract price. It was further alleged that the bond was executed by the bonding company with full knowledge on its part that the following clause, "in the estimation of the supervising architect," was omitted, and that the bonding company was informed and knew at the time the bond was executed that the plaintiff and the defendant Heermans had agreed to dispense with the services of a supervising architect; that the bond was written after said agreement was made. The bonding company filed a supplemental answer alleging that, if such alterations were made in the original contract, it was done without its knowledge or consent, and also denying that notice to Nesbitt, a member of the board of trustees of the school district, was notice to it. J. A. Heermans answered by a general denial and adopted the answer of the bonding company. The verdict was rendered against Heermans for $2,830.30, and against the bonding company for $2,500, the full amount of the bond. The bonding company alone has appealed.

The first error assigned is based upon the refusal of the court to give a peremptory instruction directing a verdict in favor of the bonding company. That assignment is based upon the following proposition: "The undisputed evidence conclusively showing that the written building contract on which the bond was predicated had been materially changed and departed from by dispensing with the architect's supervision of the work, and it not appearing that the surety on the bond consented to such change, the court should have instructed a verdict for the defendant surety." There appears to be no controversy in this appeal about the truth of the material facts alleged in the appellee's original petition, and no question is made of the sufficiency of the evidence as to the damages sustained to support the judgment recovered. Practically the only defense is that embraced in the proposition above stated. The building contract with Heermans is dated July 31, 1911, and the bond sued on is dated August 2, 1911. The specifications prepared by the architect were made a part of the building contract, and that contract is referred to and made a part of the bond sued on. The contract with Heermans contains the following provision: "That said contractor hereby agrees to furnish to the said owner, within a reasonable time, a good and sufficient bond in the sum of $2,500, payable to John A. Crawford, president of the board of trustees of Beckville school corporation, 'an independent school district incorporated for free school purposes only,' or his successors in office, for the use and benefit of said Beckville school corporation, conditioned that the said contractor shall well and truly comply, in the estimation of the supervising architect, with all the conditions and perform all the undertakings in this contract specified; and, in default of the execution and approval of said bond, this contract shall be of no force or effect."

[1, 2] The general rule is that, when the terms of the contract, the performance of which is guaranteed by a surety, are materially altered after its execution, the surety is released unless he consents to the change. But a surety relying upon that defense has the burden of proving it.

The first question to be considered is, Do the facts justify the contention that any material change, or any change at all, was made in this building contract after the execution of the bond by the surety? Neither the building contract nor the specifications expressly stipulate that Watson, or any particular person, was to be employed to supervise the construction of the building. It is only by inference from some of the requirements in the specifications that it can be said that such employment was contemplated.

[3] But, if it should be held that a supervisor was to be employed, the testimony shows that C. A. Barron, a member of the school board, did by agreement with the other members of the board give his personal supervision to the work. While he dis-

claimed being a professional architect, yet he was a practical contractor and builder, and was evidently regarded by the parties as competent to perform those services. Whether he was a professional architect or not is immaterial, if he was selected to supervise the work and was agreeable to the contractor and the board of trustees.

[4] There being nothing in the contract binding the board to employ Watson, a verbal understanding that he was not to be so employed did not constitute a material alteration sufficient to release the surety, even if made without its consent. It appears from the evidence that Watson drew the plans and specifications of the building; and the understanding between him and the members of the school board was that his compensation should be 3½ per cent. of the contract price for the plans and specifications alone; but, if he personally supervised the construction of the building, he was to receive 1½ per cent. additional. But, assuming that this agreement amounted to a material change in the building contract, it seems to have been made before the appellant signed the bond. Roberts, one of the trustees, testified as follows: "We did not have a supervising architect on the work down there; I could not say that there was; we discussed that among ourselves at the board; no, let me go a little further back; when we accepted these plans from Mr. Watson he said he would submit plans, sell us the plans, and supervise the work for 5 per cent., or he would sell us the plans without supervision for 3½ per cent., so we accepted the 3½ per cent. proposition to buy the plans, and we discussed the matter ourselves of having Mr. Barron, one of the members of the board who was a carpenter; we thought we could get along with his services when they were needed. Mr. Heermans was present when the board was discussing it; I suppose he agreed to it."

[5] It seems that the board merely agreed to take Watson's plans without his supervision, and to use the services of one of their number, C. A. Barron, who was an experienced carpenter and builder, to superintend the construction. This is the extent of the understanding between Heermans and the school board at the time this bond was made. Nesbitt, a member of the school board, acted as appellant's agent in securing Heermans' application for appellant's suretyship on the bond. The agency of Nesbitt was procured by the appellant with full knowledge on its part that he was a member of the school board, and he was requested in advance to procure the application of Heermans in the event the contract was let to him. Nesbitt collected from Heermans the sum of $29 as the premium due appellant for making the bond, and from that he deducted his commission. In conducting the negotiations with Heermans for appellant's signature to the bond, Nesbitt was engaged in a business with which the school board at the time had no concern. It was Heermans' duty, according to the terms of his contract, to present to the board for its approval a good and sufficient bond acceptable to it as a condition precedent to the beginning of their contract relations. The fact that Nesbitt was a member of the school board did not affect his power to represent the appellant in dealing with Heermans about a matter which concerned them alone. The school board had nothing to do with the bond till it was made and presented for its approval.

The record shows that Nesbitt was appointed agent in April, 1911. The contract was made with Heermans during the latter part of the following July. From this it appears that, at the time this contract with Heermans was made and the alleged alterations agreed upon, Nesbitt was the agent of the appellant. He testified that he had been specially requested by appellant's officers at Dallas to secure this particular application; that after the building contract was signed he solicited Heermans' application, secured it, and sent it to the office of the bonding company at Dallas. He also sent a copy of the building contract, but did not send the specifications. He further testified that the bond itself was prepared in the office of the bonding company at Dallas. If it can be said that any material changes had been made in the provisions of the building contract at the time of its execution by Heermans and the school board, it is clear that such modifications were known to Nesbitt. He testified that he knew all about the agreement to dispense with the services of Watson when he sent in this application for Heermans. In dealing with his principal it was Nesbitt's duty to fully inform it of all the material terms and conditions pertaining to the contract. The law will charge the principal with that notice, in a case like the present, whether it was actually received or not. Fire Ass'n of Philadelphia v. La Grange & Lockhart Compress Co., 50 Tex. Civ. App. 172, 109 S. E. 1134; Wright v. Hooker, 55 Tex. Civ. App. 47, 118 S. W. 765; 31 Cyc. pp. 1592, 1593, and notes. It seems that the appellant executed this contract of suretyship without any actual knowledge of the contents of the specifications, and could not have been influenced by any special provision contained in them. It is not claimed that any fraud or concealment was practiced by the agent, or any one, in procuring appellant's signature to the bond; nor is there any evidence showing affirmatively that appellant's general officers were not in fact aware of the understanding that no supervising architect was to be employed. The evidence does not support the charge that other alterations were made in the contract.

The judgment is affirmed.