FIREMAN'S FUND INDEMNITY COMPANY, A Corporation, Petitioner,

v.

BOYLE GENERAL TIRE COMPANY, Inc., Respondent.

No. A–10396.

Supreme Court of Texas.

June 23, 1965.

Rehearing Denied July 28, 1965.

Jones, Boyd, Westbrook & Lovelace, L. Wayne Scott, Waco, for petitioner.

Tom Moore, Jr., Waco, for respondent.

POPE, Justice.

Boyle General Tire Company, Inc. sued and recovered judgment against Fireman's Fund Indemnity Company for reformation of a fidelity bond and for $9,350.00 which two unfaithful employees took from plaintiff. The Court of Civil Appeals affirmed. 381 S.W.2d 937. Defendant, Fireman's Fund, contends that (1) limitations and laches barred plaintiff's suit for reformation and (2) Fireman's Fund can not be charged with its agent's misrepresentation or neglect which occurred when the agent was acting for a different principal. We affirm the judgments of the courts below.

Plaintiff, Boyle General Tire Company, during 1956 and 1957 was insured by a fidelity bond issued by Commercial Insurance Company of New Jersey. In December 1956 plaintiff purchased an additional business known as A–1 Alignment Brake and Tire Company. In January 1957 E. C. Boyle, plaintiff's president and sole owner, phoned E. C. Robinson, an insurance agent, and told him of the purchase and asked that Robinson include A–1's employees in the bond. Robinson, as found by the jury, represented that he would do this, but he did not do it. When the bond with Commercial expired on December 19, 1957, Robinson, in the exercise of his own judgment, changed insurers and issued a renewal bond with Fireman's Fund. That bond, like the one it replaced, did not include the employees of A–1. Boyle, upon receipt of the bond, placed it in his safe without reading it.

Plaintiff's suit for reformation and damages was not barred by limitations. The jury found that two employees took $9,350.00 from A–1 Alignment Brake and Tire Company and that Boyle first knew or should have known of the losses in November 1960. In October 1961 plaintiff filed suit against Fireman's Fund for losses sustained between December 19, 1957, and the time of the discharge of the two employees in 1960 when plaintiff discovered the shortages. The original petition did not seek reformation. Boyle did not read the Fireman's Fund policy until October 1962, almost five years after Robinson delivered it to Boyle. On November 5, 1963, plaintiff amended its petition and asked for reformation. From these dates, it appears that there was a five-year lapse between the time Robinson misrepresented that he would deliver a bond insuring A–1 against its employees' dishonest acts and the time Boyle discovered this was not done. Another year passed before plaintiff amended its petition and asked for reformation of the bond as well as damages. If limitations began to run at the time Fireman's Fund delivered its policy to Boyle on December 19, 1957, plaintiff's suit was barred. If, however, limitations began upon Boyle's discovery of the losses in November 1960 or upon discovery that the bond did not cover A–1's employees, the suit was not barred. The four-year limitation statute is applicable. Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263 (1941).

Essentially the question for decision is whether plaintiff was charged with knowledge of the bond's limits of coverage at the time Robinson delivered the bond to Boyle in December 1957. The jury found that Robinson, the agent, represented that he would deliver a policy which covered the employees of A–1, that the representation was material, that Boyle believed it and relied upon it. The jury also found that Robinson, the agent, was negligent in omitting A–1 from the 1957 bond; but that Boyle was neither negligent in failing to discover the omission earlier, in failing to read the policy, in relying upon Robinson's representation, nor in signing the application for the 1957 policy in blank. The only issue answered favorably to defendant Fireman's Fund was that Robinson did not conceal his failure to include A–1 in the policy.

■ Since the jury found that Robinson represented that he would deliver a policy to Boyle that included A–1, that he was negligent in failing to include A–1's em-

ployees, and plaintiff was free from negligence in discovering the omission; Fireman's Fund must show that plaintiff was charged as a matter of law with knowledge of the contents of the policy he had in his safe continuously from December 1957. Fireman's Fund argues that the insured was so charged under the principles of Wise v. Anderson, 163 Tex. 608, 359 S.W. 2d 876 (1962). The rule followed in Texas is that an insured who accepts a policy without dissent, is presumed to know its contents, but the presumption may be overcome by proof that "he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed he had correctly drawn it." Delaware Ins. Co. v. Hill, 127 S.W. 283, 286–287 (Tex.Civ.App.1910, writ ref.); 81 A.L.R.2d 66–71; 44 C.J.S. Insurance § 279. Plaintiff made that proof and overcame the presumption.

■ In Aetna Ins. Co. of Hartford, Conn. v. Brannon, 99 Tex. 391, 89 S.W. 1057, 2 L.R.A.,N.S., 548 (1905) the insurer issued a policy which insured products that were located in a building that was mistakenly described. The insurer stood on the policy which the insured had in his possession but had never read. The Court permitted a reformation saying, "The fact that plaintiff accepted the policy without noticing the mistake would not preclude him * * * from having the mistake corrected." Accord, Kelley v. Ward, 94 Tex. 289, 60 S.W. 311, 313 (1901); Cranfill-Reynolds Co. v. Security Ins. Co., 67 S.W.2d 258, 261 (Tex.Com.App.1934). The prevailing view is summarized in 4 Appleman, Insurance Law and Practice, 858, § 2913 (1941):

"* * * The majority view apparently permits the insured to rely upon the thought that the oral intention of the parties was expressed in the written contract, and does not require him to examine the policy. Those cases permit recovery, as an examination of their facts will show, though the suit for reformation is not brought for several months, and perhaps even several years, after the policy was delivered. The minority view requires that the insured act diligently in examining the policy and notify the insurer if the contract is not satisfactory, and holds reformation to be barred by the insured's own laches if he fails so to do. The latter view is certainly the more logical, but it is decidedly questionable whether the average layman who is insured would ever comply with such a legal duty."

■ Plaintiff's suit for reformation was not barred by laches. Here, too, all jury findings favored the plaintiff. The jury found that the time between Boyle's discovery in November 1960 of the thefts by the employees and the date of his demand upon Robinson, the agent, was not unreasonable. It also found that the lapse between the date Boyle knew or should have known of Robinson's failure to include A–1 in the bond and the time plaintiff sued for reformation was not unreasonable. There was no finding and there is no proof that plaintiff's delay in any way worked an injury upon Fireman's Fund. The briefs point to none. When Boyle discovered the defalcation, he immediately notified Fireman's Fund. One month later in December 1960, when the policy expired, Fireman's Fund issued a renewal policy that correctly included A–1. Nothing indicates that Fireman's Fund would have refused to supply the coverage if it had learned of the omission at an earlier time. If the delay resulted in any injury, we are uninformed of the nature of that injury. Gulf, Colorado & Santa Fe Ry. Co. v. McBride, 159 Tex. 442, 332 S.W.2d 492, 500 (1958); Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066 (1938); 30 C.J.S. Equity §§ 112, 116.

■ Fireman's Fund urges that Robinson, as a matter of law, was not its agent.

Its first reason assigned is that Robinson was acting for plaintiff and was its agent. The proof was that Fireman's Fund supplied Robinson with blank Fireman's Fund policies which bore the printed signatures of the company president and secretary. When plaintiff received its policy from Fireman's Fund, Robinson handled the transaction by signing the policy, delivering it to plaintiff and collecting the premium. These circumstances support the findings that Robinson was agent for Fireman's Fund. They are the same as those discussed in National Guaranty Fire Ins. Co. v. King, 24 S.W.2d 501 (Tex.Civ.App. 1930, writ ref.).

A more serious challenge to Robinson's agency is the point that he was acting for Commercial Insurance Company, not Fireman's Fund, in January 1957, the time of his original misrepresentation and neglect. At that time, Fireman's Fund was not the principal; Commercial Insurance was. It was not until December 19, 1957, that Robinson, in the exercise of his own judgment, changed the insurer from Commercial Insurance to Fireman's Fund. Robinson for several years had handled all of the insurance for Boyle individually and for his business. At any time he would have as many as twenty different policies covering Boyle, Boyle General Tire and A–1. When Boyle asked that a particular risk be insured, Robinson would select the insurer, would "automatically" renew the policy, and would sometimes place the insurance with a different insurer upon renewal. He did this when the Commercial Insurance Company's bond came up for renewal on December 19, 1957. Instead of renewing the bond with Commercial Insurance Company, one of his principals, he changed to Fireman's Fund, another of his principals. The renewal bond with Fireman's Fund was for a term of three years during which time the shortages in A–1's funds occurred. The renewal bond, like the one it replaced, omitted A–1's employees from the risk coverage.

Fireman's Fund is bound by the misrepresentation of its agent made in January 1957 though it did not write its policy for Boyle until December 1957. The Supreme Court in Wellington Oil Co. of Delaware v. Maffi, 136 Tex. 201, 150 S.W. 2d 60 (1941), held that an agent could bind his principal though the agent's knowledge of the material facts was gained prior to the creation of the principal-agent relationship. The court recognized the general rule that a principal is unaffected by the knowledge of an agent unless such knowledge came to the agent while he was transacting the business of his principal, Taylor v. Taylor, 88 Tex. 47, 29 S.W. 1057 (1895); but the court then stated an exception which is recognized by § 276 of the Restatement of the Law of Agency and also by Texas decisions. That section provides:

"Except for knowledge acquired confidentially, the time, place, or manner in which knowledge is acquired by a servant or other agent is immaterial in determining the liability of his principal because of it." * * *

" * * * Since the mind of the agent cannot be divided into compartments, the principal should be bound by whatever knowledge the agent has, irrespective of its source or time of acquisition, unless it is the kind of knowledge which the agent can properly disregard in the specific case because of having acquired it confidentially." Restatement of Agency 2d, § 276, Comment A (1958).

American Surety Co. of New York v. Fenner, 133 Tex. 37, 125 S.W.2d 258 (1939), applied the rule. The surety company paid a bank its losses occasioned by the dishonesty of one of its bank clerks. It then sued a stock brokerage firm to recover the funds, because its agents knew that the investor had dishonestly taken the funds from the bank. The brokerage firm's defense was that it could not be charged

with knowledge that its local agents had obtained before they began working for the firm. The knowledge of the local agents was imputed to the principal though they acquired the knowledge before the principal-agent relationship arose. Accord, National Fire Ins. Co. of Hartford v. Carter, 257 S.W. 531 (Tex.Com.App.1924); General Bonding & Casualty Ins. Co. v. Beckville Independent School Dist., 156 S.W. 1161 (Tex.Civ.App.1913, writ ref.); Fire Ass'n of Philadelphia v. LaGrange & Lockhart Compress Co., 50 Tex.Civ.App. 172, 109 S.W. 1134 (1908, writ ref.); In re Distilled Spirits, 11 Wall. 356, 20 L.Ed. 167 (1870); 3 C.J.S. Agency § 274.

■ The cases discussed and cited above generally concern the extent to which knowledge of an agent, acquired prior to the creation of the agency, will be imputed to the principal. More closely in point are the cases in which an insurance agent's mistake or fraud occurred before the agent transacted the business of the principal. Such fraud or mistake has usually been imputed to the principal whether the renewal policy was issued through the same agent with a different company, Phoenix Fire Ins. Co. v. Hoffheimer, 46 Miss. 645 (1872); Aiken Petroleum Co. v. National Petroleum Underwriters of Western Millers Mut. Fire Ins. Co., 207 S.C. 236, 36 S. E.2d 380 (1945), or the renewal policy was issued with the same company but through a different agent. Bickford v. Aetna Ins. Co., 101 Me. 124, 63 A. 552 (1906); Martin v. American Ins. Co., 198 Wis. 214, 223 N.W. 437 (1929); 91 A.L.R.2d 546, 563–567. But see Lumbermen's Ins. Co. v. Heiner, 74 Ariz. 152, 245 P.2d 415 (1952); Glaser v. Alexander, 247 Minn. 130, 76 N.W.2d 682 (1956).

In Phoenix Ins. Co. v. Hoffheimer, supra, Fairchild, as agent for Aetna Insurance Company correctly issued a fire policy in September 1865. When it expired on February 19, 1866, Fairchild renewed the policy but changed the insurer to Phoenix Insurance Company, which was one of several companies he represented. The renewal policy incorrectly stated the name of the insured and after a fire the insured sued to reform. Phoenix' defense was that the Company did not know the correct name of the insured. The court granted the prayer for reformation and recovery because the knowledge of the agent, gained at the time of the first policy with a different company, was imputed to Phoenix.

■ Aiken Petroleum Co. v. National Petroleum Underwriters, etc., supra, is even more convincing. Insured dealt with Perry Moses who was agent for a number of insurance companies. Insured specifically demanded a policy without a co-insurance clause. The agent placed the policy with one of his principals in 1937 and renewed the policy in 1938 and 1939 with the same company. Those policies complied with the insured's requirements. In 1940 the same agent placed the insurance with Western Millers, whom it also represented and which company had taken over the former insurer's business. That policy, as well as its renewal in 1941, again respected the insured's wishes. The 1942 and 1943 renewals with Western Millers, unknown to the insured, included the co-insurance clause, which the insured asserted was a fraud upon him, and he sought a reformation of the policy after a fire occurred. A jury found that the agent in 1937 had represented that the policy and any future policies he wrote would exclude a co-insurance clause, that the agent at the time of his change of companies had in mind the assurances he had earlier given the insured, and that the change in the policy was the result of fraud and mistake. The court held that knowledge of an agent acquired before the existence of the agency may be chargeable to the principal if it be clearly shown by the evidence that the agent had in fact retained the previously acquired information in his mind and mem-

ory while engaged in a subsequent transaction on behalf of his principal.

The case most similar to the instant one is Commercial Standard Ins. Co. v. Paul, 35 Tenn.App. 394, 245 S.W.2d 775 (1951). In 1947 J. M. Kemp issued an automobile liability policy which mistakenly named the insured. The policy was with Car & General Insurance Corporation. The renewal policy in December 1947 was with a different insurer, the Commercial Standard Insurance Company. It carried forward the earlier mistake. In 1948 another renewal policy was issued, again with Commercial Standard, and for the third time the insured's name was incorrect. In a declaratory judgment action, the court held that the subsequent insurer was charged with the earlier mistake of its agent. The court posed the question and gave its answer in these words:

"It is urged that the knowledge previously acquired by Kemp in 1947 and prior thereto, while acting for another principal, would not subsequently be imputed to complainant when its policy was issued as a renewal by said agent.

"* * * All Mrs. Paul and her daughter wanted was protection, and they appeared to have relied completely upon Mr. Kemp's judgment on matters pertaining to insurance. In 1947 when the renewal policy was issued in complainant company, Mrs. Paul was not told by Mr. Kemp of the change in companies and no additional information was requested of her. It is apparent that when the agent issued the renewal policy with complainant, he used the information previously acquired while representing the Car & General Insurance Corporation, Ltd.

Under these circumstances we think that the knowledge, though previously acquired by the agent, would be imputable to complainant."

■ Fireman's Fund also says that plaintiff failed to do equity because it did not plead nor prove that it had tendered the difference in premiums which coverage of A–1 would have required. The difference for the three-year premium was $220.42. Plaintiff generally pleaded "that all premiums, covenants and conditions of said bond have been fully complied with. * * *" Defendant did not specially except and did not specially deny plaintiff's pleadings. Rule 54, Texas Rules of Civil Procedure authorizes plaintiff to plead "generally that all conditions precedent have been performed or have occurred." The rule requires the plaintiff to prove only those conditions precedent that are specially denied. The case was tried upon the issues discussed in this opinion. The matter of premiums came into the record incidentally, and to show that Robinson, the agent, would have been eager to include A–1 as an additional insured if he had been asked to do so, because the additional coverage would have entitled him to a larger commission. As tried, the issue of doing equity was not before the trial court. 2 McDonald, Texas Civil Practice, § 6.14. Plaintiff's judgment should, however, be reduced by the amount of premiums he would have paid under the reformed policy.

The judgments of the courts below are reformed by crediting the judgment with the sum of $220.42, and as reformed, are affirmed.

GRIFFIN, J., dissenting.