INDIANA & O. LIVE STOCK INS. CO. v.
KEININGHAM.

(Court of Civil Appeals of Texas. Dallas. Nov. 1, 1913. Rehearing Denied Dec. 13, 1913.)

1. INSURANCE (§ 146*)—ISSUANCE OF POLICY—DUTY TO READ.

Insured is ordinarily bound by the terms of the policy, whether he reads it or not.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

2. INSURANCE (§ 145*)—ISSUANCE OF POLICY—CONDITIONS.

Where live stock insurance policies and applications therefor did not provide that the policy was in force only while the horse was in a certain town and insured requested a similar renewal policy, and the application therefor did not contain such limitation, insured could assume without reading it that the policy issued did not contain the provisions so limiting the company's liability.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 276–291; Dec. Dig. § 145.*]

3. INSURANCE (§ 151*)—CONSTRUCTION OF CONTRACT — CONFLICTING PROVISIONS — POLICY AND APPLICATION.

Where an application for a live stock insurance policy recited that the policy should be "based entirely upon" the answers in the application, and the policy provided that the application was a "part of the policy" and a warranty by assured, if the policy provided that the horse should be insured only while it remained in a certain county, while the application did not so limit the company's liability, the application would control.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 308–311; Dec. Dig. § 151.*]

4. INSURANCE (§ 146*)—CONSTRUCTION OF CONTRACT.

Every doubt must be resolved against the company in case of conflicting and inconsistent provisions in an insurance policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

Error to Ellis County Court; J. C. Lumpkins, Judge.

Action by J. D. Keiningham against the Indiana & Ohio Live Stock Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Wm. Thompson and John S. Patterson, both of Dallas, for plaintiff in error. Will Hancock, W. H. Fears, and Supple & Harding, all of Waxahachie, for defendant in error.

RASBURY, .J. Defendant in error sued plaintiff in error upon a policy of insurance by which plaintiff in error agreed to pay defendant in error $750 in the event of the death of defendant in error's horse described in said policy and alleged the death of the horse and the compliance by defendant in error with all provisions of the policy. In answer to the suit plaintiff in error, in addition to general demurrer, special exceptions, and general denial, alleged specially that the horse died at Dallas, where it was being exhibited at the State Fair, for which it was not liable, since the policy was in force only while the horse was situated in Waxahachie, Ellis county, and with the plea tendered back the premium paid and asked that the policy of insurance be canceled. In response to plaintiff in error's special plea, the defendant in error averred that in 1909 and 1910 plaintiff in error, upon written application by defendant in error, insured said horse under said policies without such provision, and that upon the expiration of the 1910 policy he made application for a renewal of his policy for 1911, without the clause prohibiting the removal of the horse to other places, and that subsequently plaintiff in error's agent delivered defendant a policy represented to be in compliance with his application, and, relying upon said representations, defendant in error accepted the policy without reading it and placed the same in a local bank. If was also alleged that the provision regulating the situation of the horse was fraudulently inserted in the policy by plaintiff in error, and that defendant in error was not bound thereby. Defendant in error further alleged that plaintiff in error's agents had full knowledge of the fact that said horse was being removed from Ellis county and acquiesced therein and consented thereto, and further that express notice was given one of plaintiff in error's special agents, and that in

neither case was any protest made. The foregoing is in substance the answer of defendant in error to the plaintiff in error's defense. We have not attempted to recite it in the order in which it is set out, since it is in no sense set out in due order of pleading. Upon trial by jury, verdict was for defendant in error for the amount of the policy.

The evidence warrants the following conclusions of fact: The policies by which the horse was insured were issued upon printed applications filled in by plaintiff in error's local agent in Waxahachie, signed by defendant in error, and then forwarded to Gainesville to Mr. J. W. Blanton, a general agent, who had authority to and did issue the policy. The 1909, 1910, and 1911 applications signed by defendant in error did not contain any provision that the horse while insured should remain in Ellis county. Nor did the 1909 and 1910 policies of insurance contain any such provisions. On the back of the 1910 and 1911 applications, however, there was written the provision pleaded by plaintiff in error. The clause was written there by Mr. Blanton, or by his direction, in his office in Gainesville, after defendant in error had signed same, without the knowledge or consent of defendant in error, and without notice to him by Blanton or the local agent. The 1911 application was designated "Renewal Stallion Application," and in making application for insurance defendant in error requested the local agent to renew his old policy. The 1911 policy issued upon the 1911 application did contain the clause prohibiting the removal of the horse from Waxahachie; but, as we have just said, the application did not. The policy was sent by Mr. Blanton to Mr. Alderman, plaintiff in error's local agent, was countersigned by Alderman, and delivered to defendant in error. Defendant in error did not read the policy, but placed same with a local bank for safe-keeping, where it remained until the insured horse died. Neither Alderman, the local agent, nor Blanton, the general agent, notified defendant in error that the policy contained the provision mentioned. The application for insurance provided that all the statements therein of defendant in error in reference to the description, condition, situation, and value of the horse should be warranties, and warranted as well that no oral representations contrary thereto had been made by defendant in error to the local agent, and that the agent had made no contrary representations to him and agreed that any agent of the company was without authority to bind the company to conditions not contained in the application. The policy of insurance issued upon said application provided that the application, which was the basis of the insurance, should be a part of the policy and should constitute one of its warranties. The policy also provided that the horse was insured while situated in Waxahachie or Ellis county and not else-where. The policy also contained warranties unequivocally reciting that agents of the company were without authority to waive the conditions, stipulations, provisions, or agreements of the policy, or to alter or discharge contracts or waive forfeitures, etc. Defendant in error notified Alderman, plaintiff in error's local agent, and also Tullos, a special agent, that he intended to exhibit his horse at the State Fair in October, 1911, and both said he might do so. Alderman testified that he also wrote the company, notifying it that defendant in error would exhibit the horse at the State Fair in 1911, but received no reply from the company.

The materiality of all of the assignments of error presented by plaintiff in error depend upon the construction to be placed upon the conflict between the application for insurance signed by defendant in error and the policy issued by plaintiff in error upon said application, and accordingly, in order to shorten this opinion and relieve it of unnecessary issues, we will first consider that point. As we have said in the statement of the pleading, defendant in error averred in the court below that the former policies issued to him did not contain the provision requiring the horse to remain in Ellis county in order to make the policy enforceable, and the evidence and the verdict sustained the claim. Such provision was not contained in his application upon which the policy sued upon was issued, but by the pleading and evidence and verdict it appears defendant in error fraudulently inserted said provision into the policy. Thus, it appears that the provision in the policy is in conflict with the application, in that by the terms of the application the assured was not bound to keep the horse within any particular place, and the collection of the loss as a consequence was not at all dependent upon keeping the horse in Ellis county. Incidental to the question of the conflict between the application and the policy is the preliminary question relating to the duty of defendant in error to examine his policy at all events when delivered to him.

[1] It is stated by Mr. Chief Justice Brown of the Supreme Court, in Ætna Insurance Co. v. Holcomb, 89 Texas, 404, 34 S. W. 915, and supported by numerous authorities, in effect, that the insured, in the absence of any showing of facts or circumstances that will relieve him from the provisions thereof, is bound by the terms of his policy whether he reads it or not.

[2] Measured by the rule stated, were the facts proven upon trial of the case at bar sufficient to relieve defendant in error from the binding force of the terms of the policy? We think they clearly are. Aside from the fact that the former policies contained no such provision, and that his application stated that the 1911 policy was to be a renewal of his former policy, the application in effect requested the issuance of a policy

without the restriction imposed by the policy actually issued, and, in the absence of any notice from the company that it intended to issue a policy containing vital restrictions not provided for by the application, defendant in error had the right to assume that such a policy would be issued as he had requested. The application was one apparently prepared and printed by plaintiff in error for its private use, and, if it intended to ingraft upon it some new provision after defendant in error had signed same, some notice of such intention must have been given defendant in error in order to bind him thereto. Accordingly, we hold that the proven facts were sufficient to excuse defendant in error from reading his policy.

[3] What then results from the conflict in the provisions of the application and the policy? And in determining that question we must keep in mind that the application recites that the policy to be issued "shall be based entirely upon" the answers contained in such application, and that the policy in pursuance of the declarations of the application especially recites that the application is a part of the "policy and a warranty on the part of the assured." The application is thus made as much a part of the policy as if its very terms were written into the body of the policy. That being true, then we have one provision of the policy which provides that in order to collect the insurance in case of a loss the horse must be in Ellis county at the time of its death, and another provision that has no restrictions whatever relating to the location of the horse.

[4] In case of conflicting or inconsistent provisions in policies of insurance, it is said in Bills v. Hibernia Insurance Co., 87 Tex. 547, 29 S. W. 1063, 29 L. R. A. 706, 47 Am. St. Rep. 121, that every doubt arising thereon must be resolved against the insurer. To the same effect is Goddard v. East Texas Fire Ins. Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1: "The application was a part of the contract, and, if the appellee stated therein that he applied for insurance upon certain conditions * * * in direct conflict with the conditions of the policy issued under and pursuant to the application, it must be assumed that such conditions in the policy were waived by the company when it issued the policy." Phenix Ins. Co. v. Lorenz, 7 Ind. App. 266, 33 N. E. 444, 34 N. E. 495. See, also, McElroy v. British America Assurance Co., etc., 94 Fed. 990, 36 C. C. A. 615, and many cases there cited. Hence, and in accordance with the views above expressed and the authorities cited, we hold that defendant in error was excused from reading his policy; that the acceptance of his application without notice by plaintiff in error of its intention to issue a policy of insurance varying the terms of the application was a waiver of the provision restricting the loca-

tion of the horse, and that in any event that clause, being in conflict with another portion of the policy, must give way to the other if thereby a forfeiture of the policy can be avoided. There being no conflict in the testimony upon which our conclusions are based, and such conclusions being sufficient to sustain the judgment of the trial court, it is unnecessary to further discuss the various assignments of error, and, for the reasons stated, same are overruled.

The judgment is affirmed.