United States Court of Appeals,

Fifth Circuit.

No. 91–3593.

Bruce HEINHUIS, et al., Plaintiffs,

v.

VENTURE ASSOCIATES, INC., et al., Defendants.

NORMAN OFFSHORE PIPELINES, INC., Defendant–Third Party Plaintiff–Appellee,

v.

John Kevett SPICER, Individually, Etc., et al., Third Party Defendants–Appellants.

April 29, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REAVLEY, JOLLY, and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This maritime insurance case requires us to determine whether the parties to an excess insurance policy would be bound—by simple reference to an underlying policy—to the arbitration clause in that underlying policy. For the reasons below, we find that the policy would require arbitration. The threshold determination, however, of whether the parties in this appeal are in fact parties to the contract must still be resolved. We will therefore remand the case to determine whether the parties were bound by the contract at all, in which case, issues of coverage under the contract will be subject to arbitration.

I

Certain underwriters and companies at Lloyds of London ("Lloyds") subscribed to an excess insurance policy for Norman Offshore Pipeline Contractors, Inc. ("NOPC"), effective September 9, 1988. The policy was amended by endorsement on January 17, 1989, to include Norman Offshore Pipelines, Inc. ("NOPI") as a named insured from January 13, 1989. The policy is an excess protection and indemnity ("P & I") policy, which provides a limit of liability of $750,000 in excess

of primary liability coverage of $250,000. The policy specifies, in the *CONDITIONS* paragraph of the declaration page, "All terms, clauses and conditions as per Underlying policy(ies) as far as applicable." The underlying policy was issued by Ocean Marine Mutual Protection and Indemnity Association (USA) Ltd. ("OMMPIA") and provided P & I coverage of $250,000. The terms of the OMMPIA policy are contained in the association's rulebook. Rule 34 of that book specifies that all disputes between a member insured and the association shall be arbitrated in London.[1]

On September 9, 1988, Bruce Heinhuis was injured while employed by Venture Associates, Inc. (Venture) and working aboard the *Delta I,* a pipeline-laying barge owned by NOPC and under charter to NOPI. Heinhuis sued both NOPI and Venture in Louisiana state court, seeking damages under maritime law and the Jones Act.

Lloyds refused to defend NOPI in Heinhuis' suit, and NOPI filed a third-party complaint against Lloyds on May 7, 1990. On May 9, NOPI and Venture settled Heinhuis' claims against them.

On June 13, 1990, Lloyds removed this case to federal court. In April 1991, Lloyds moved

---

[1]Rule 34 specifies:

> If any differences or disputes shall arise between a Member and the Association out of or in connection with these Rules or any contract between them as to the rights and obligations of the Association or the Member thereunder or in connection therewith, such differences or disputes shall in the first instance be referred to and adjudicated upon by the Directors.

> If the Member concerned in such differences or disputes does not accept the decision of the Directors or if the Directors shall fail to make any decision within three months of the reference to them of the difference or the dispute, it shall be referred to the arbitration in London of an arbitrator agreed by the parties or, if they cannot agree upon a sole arbitrator, to the decision of two arbitrators (one to be appointed by each of the parties)....

> No member shall be entitled to maintain any action, suit, or other legal proceedings against the Association otherwise than in accordance with the procedures laid down in this Rule and they may only commence proceedings, other than the arbitration above, so as to force an award, under such arbitration and then only for such sum, if any, as the award may direct to be paid by the Association.

to stay litigation pending arbitration. The district court denied the motion. In doing so, however, the court considered the issues raised without expressly deciding the nature of the relationship between the parties, noting instead that Lloyds had not unequivocally denied the existence of the contract. The court then held that the motion to stay should be denied even if a contractual relationship exists between the parties. Finding an ambiguity, and construing the ambiguous terms against the interests of the insurer, the court determined that the arbitration clause of OMMPIA Rule 34 was not a part of the insurance contract, and, consequently, denied the stay. The court also denied Lloyds' subsequent motion to amend its order. Lloyds appeals, seeking to compel arbitration.

## II

The way this case comes before us, the primary issue is whether the district court erred in denying arbitration under the contract. The district court's holding was predicated on a finding that the reference of the excess policy incorporating the arbitration clause of the underlying policy was ambiguous because

> the excess policy provide[d] no guidelines for determining which provisions of the underlying policy [were] applicable to the excess policy.... [W]here an insurance policy is uncertain, it should be construed against the insurer who wrote it. [citation omitted]. Thus, the terms of the excess policy must be construed against the insurer.... [T]he applicability of ... provisions of the underlying policy, ... must be more clearly evident than is the case here.

We review the district court's interpretation of the policy *de novo. McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1204 (5th Cir.1991) (citing *USX Corp. v. Tanenbaum,* 868 F.2d 1455, 1457 (5th Cir.1989)).

## A

Lloyds' excess P & I policy provided that the terms and conditions of the underlying policy would govern. Lloyds' policy noted specifically that the underlying policy was that issued to NOPC by OMMPIA.

This court has held that wording similar to that used in this excess policy to incorporate by reference the provisions of the underlying policy is adequate to do so as a matter of Louisiana law. *Insurance Co. of North America v. Board of Comrs.,* 733 F.2d 1161, 1167 (5th Cir.1984). In that case, the excess policy used the wording "as per primary policies." In this case, the excess policy used the wording "as per Underlying policy(ies) as far as applicable." Clearly, Lloyds' policy adequately referenced the terms of the OMMPIA policy.

The district court found, however, that the phrase "as far as applicable" created an ambiguity because "[t]he excess policy provide[d] no guidelines for determining which provisions of the underlying policy [were] applicable to the excess policy."[2] The court then concluded: "To allow the third part y defendants to avail themselves of one isolated step in the OMMPIA dispute resolution process would be a strained interpretation of the excess policy agreement." Having declared the presence of an ambiguity, the district court construed the ambiguous terms of the policy against the insurers and denied Lloyds' motion to enforce the arbitration clause.

The district court erred in finding that the arbitration clause was ambiguous and in not interpreting it neutrally. We have often held that a court applying Louisiana law should interpret a policy according to its plain meaning and not distort its meaning to introduce an ambiguity. *See, e.g., Trinity Industries, Inc. v. Ins. Co. of North America,* 916 F.2d 267, 269 (5th Cir.1990). Instead, the courts are to interpret the policy so as to give effect to the intent of the parties; if the purpose of an excess policy is obviously to be an extension of the primary policy, the parties' intent to be bound by the terms of the primary policy should be respected. *Insurance Co. of North America,* 733 F.2d at 1167.

---

[2]Specifically, the district court pointed out that OMMPIA Rule 34's first paragraph requires submission of disputes to OMMPIA's Board of Directors before arbitration. Lloyds agreed that the step is not applicable. The court found that such selectivity rendered the whole rulebook ambiguous. "The third party defendants admit ... this first step in the dispute resolution process of Rule 34 is not applicable to the excess policy. [They], however, offer no reasoned explanation why the arbitration provision is any more applicable than the rest of Rule 34."

Admittedly, some language in Rule 34 was clearly inapplicable to a dispute between *Lloyds* and *NOPI* because it required disputes between members of OMMPIA and OMMPIA to first be submitted to OMMPIA's board of directors. Such partial inapplicability of the rule, however, is no reason to reject the unambiguous "as applicable" instruction in the excess policy in adopting (reading) the terms of the underlying policy.

B

We have found that Lloyds' excess policy clearly and adequately referred to the terms of OMMPIA's underlying policy, and that the terms govern the relationship between Lloyds and its insured so far as the terms are applicable to the parties to the excess coverage policy. Given the framework of the OMMPIA membership rules, the proper way to apply these terms is to place Lloyds in the position of the Association and the insured in the position of the Member. We thus both read the word "insurer" for "Association" and read the word "insured" for "Member." We also omit language that pertains solely to members of OMMPIA. Thus read, the pertinent segments of Rule 34 state:

> If any differences or disputes shall arise between *the insured* and *the insurer* out of or in connection with the these Rules or any contract between them ... it shall be referred to the arbitration in London of an arbitrator agreed by the parties or, if they cannot agree upon a sole arbitrator, to the decision of two arbitrators (one to be appointed by each of the parties). ....
>
> No *insured* shall be entitled to maintain any action, suit, or other legal proceedings against the *insurer* otherwise than in accordance with the procedures laid down in this Rule and *the insured* may only commence proceedings, other than the arbitration above, so as to force an award, under such arbitration and then only for such sum, if any, as the award may direct to be paid by the *insurer*.

Any doubt that this reading of the policy to find a duty to arbitrate is appropriate should be resolved in favor of the federal policy of encouraging arbitration. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). In this case, moreover, the language is susceptible to a simple construction clearly requiring arbitration. Thus, according to the language of Rule 34 there is a duty to arbitrate. If the excess P & I policy covers NOPI, then the terms of the

underlying OMMPIA policy, including the duty to arbitrate in Rule 34, are binding upon NOPI in this dispute.

## III

Our holding that the contract (including the terms of both the excess P & I policy and the underlying OMMPIA policy) requires arbitration does not, however, resolve this appeal. Lloyds seeks to compel NOPI to arbitrate this dispute, but the contract is the only source of a duty upon NOPI to arbitrate its claim. Unless NOPI is bound by the contract, it may not be compelled to submit to arbitration.

The district court pretermitted the question of whether there is a contract between Lloyds and NOPI. Essentially, the court found it unnecessary to address the question of coverage, because arbitration would not be required even if there was a contract between NOPI and Lloyds. We have held that the contract requires arbitration. Whether there is a contract, therefore, is an issue central to the case, which must now be determined.[3]

We will therefore remand the case for the district court to determine whether NOPI was in fact a party to Lloyds' excess coverage policy at the time of Heinhuis' injuries. Should the district court find that NOPI was insured by the policy, then the dispute over coverage related to Heinhuis' suit will be subject to arbitration.

## IV

---

[3]It is difficult to determine from the record the degree to which the parties truly dispute applicability of the excess policy. Simply, each party is attempting to bind its opponent to one clause of the contract without being bound by another. They, therefore, have each been ambiguous in their respective positions concerning their obligations. Certainly, the party resisting arbitration must put the existence of an agreement to arbitrate in issue. *T & R Enterprises, Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1277–78 (5th Cir.1980). Because of the posture of counsel at oral argument and because the district court's opinion addressed the issue as if it were raised, we consider it to have been put in issue, either by Lloyds' denial of coverage or by NOPI's resistance to arbitration.

We, therefore, REVERSE the order of the district court and REMAND this case for the court to determine whether NOPI was covered by Lloyds' excess P & I policy, and if so, to stay this action pending arbitration pursuant to OMMPIA Rule 34.

REVERSED and REMANDED.