IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-2288

---

HARBOR INSURANCE CO.,

Plaintiff-Appellee,

versus

URBAN CONSTRUCTION CO. AND AUGUSTA COURT
CO-OWNERS ASSOCIATION, INC.,

Defendants,

URBAN CONSTRUCTION CO.,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

( April 22, 1993 )

Before Reynaldo G. GARZA, HIGGINBOTHAM, and Emilio M. GARZA,
Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This is a dispute between a commercial insurer and its insured. The insured, Urban Construction Co., was held liable for damage caused by defects in its condominium project. Harbor Insurance Co. held an umbrella policy during construction and, relying on their diversity of citizenship, sought a declaration from the federal courts that it had no duty to indemnify Urban. Urban counterclaimed for damages. The district court granted summary judgment to Harbor.

Harbor sold twelve-month umbrella, or excess liability, policies to Urban for three successive years.[1]  These policies were sold through Harbor's agent and affiliate, Swett & Crawford.  Swett dealt with Urban's independent insurance agent, Collier Cobb & Associates.  The first of these policies contained a standard list of exclusions, including the following:

> This Policy shall not apply . . . (e) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.[2]

For the second policy the following year, the parties negotiated a special endorsement with a corresponding additional premium.  This endorsement modified exclusion (e) by stating:

> It is understood and agreed that exclusion e [of the policy] is amended to read as follow:
> e.  to property damage to the Named Insured's work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts, or equipment furnished in connection therewith.

This endorsement deleted exclusion (e)'s reference to work done "on behalf of" the insured.  It was effective from April 1980 to April 1981.  The endorsement was intended to broaden the policy's coverage to property in the "care custody and control" of Urban.  This modification followed a similar modification of the underlying primary policy.

In 1981, Swett and Collier Cobb negotiated a twelve-month renewal of the existing umbrella policy.  Collier Cobb completed an

---

[1]The policies covered 1979-80, 1980-81, and 1981-82.

[2]We shall refer to this unmodified exclusion as "exclusion (e)" or the "work performed" clause.

application provided by Swett. In response to the application's inquiry about restrictions of the underlying primary coverage policy, Collier Cobb indicated "Care Custody and Control Amendment-Following Form Endorsement Required." Exhibits produced by Swett and Collier Cobb indicated that the umbrella policy was to be renewed under the same terms as the existing policy. In its summary judgment pleadings, Harbor admitted that the parties intended to modify exclusion (e) when they renewed the umbrella policy for 1981-82.[3]

Swett signed the 1981-82 renewal policy for Harbor and delivered it to Collier Cobb. The modifying endorsement was not attached to the delivered renewal policy. The renewal policy did contain a "Contractors Limitation" endorsement. This endorsement stated:

> It is understood and agreed that except insofar as coverage is available to the Insured in the underlying insurances as set out in the attached schedule this insurance shall not apply:
> 1. to products and completed operations . . .
> 3. to loss of or damage to property while in the care, custody, or control of the insured.

The schedule referred to by the contractors limitation endorsement listed the primary general liability insurance policy provided by Aetna Casualty and Surety. The primary policy included a "Broad

[3]The brief supporting Harbor's "Additional Material in Support of Plaintiff's Motion for Summary Judgment and Response to Defendant's Motion for Continuance" reads: "[F]or the purposes of its Motion for Summary Judgment only, Harbor will admit Urban's allegations that the parties intended to modify the work performed exclusion when they negotiated a renewal of the 1980-81 Harbor policy."

3

Form Comprehensive General Liability Endorsement" modified by endorsement.[4]

Collier Cobb recognized that the renewal policy lacked a modifying endorsement. John Irwin of Collier Cobb directed someone to see about obtaining the endorsement from Harbor. At some point, Collier Cobb informed Urban of the omission.

During the renewal policy's coverage period, Urban was the general contractor for a condominium project. Urban contracted with Augusta Court Associates, Ltd. in 1979 to construct the project. Urban subcontracted most of the work on the project. The project's certificate of substantial completion was dated March 22, 1982. An architect, however, discovered water leakage problems causing corrosion. Urban then performed corrective roofing work. When more leakage complaints arose in 1983, Urban denied that any remaining problems were due to its work.

On February 14, 1985, Augusta sued Urban alleging negligence and breach of contract. Augusta sought damages caused by construction defects. Urban advised both Aetna and Harbor of this lawsuit in July 1985. By letter of April 19, 1989, Harbor reserved its rights under the umbrella policy pending an investigation of

---

[4]The governing endorsement thus read:
VI.  Broad form property damage liability coverage (including completed operations)  The insurance for property damage liability applies, subject to the following additional provisions:
(A) Exclusions (K) and (O) are replaced by the following:
. . . (O) to property damage to that part of work performed by the named insured out of which the occurrence arises.

Augusta's claims. On June 28, 1989, Urban made demand upon all of its primary and excess carriers, including Aetna and Harbor, to settle the lawsuit prior to binding arbitration.[5] Aetna and another primary insurer each tendered $100,000, the limits of their property damage liabilities, to Augusta.

Urban advised Harbor that Augusta had made a settlement offer within the limits of the umbrella policy, and advised Harbor of Urban's willingness to pursue legal action against Harbor if Harbor failed to comply with its obligations.

Harbor continued to reserve its rights and investigate. Meanwhile, the arbitration proceeding awarded Augusta $1,261,450.00 on August 14, 1989. Urban promptly demanded indemnification by Harbor for this award. On September 1, 1989, Harbor denied coverage of the claim. This suit followed.

Harbor sued on September 6, 1989, seeking a declaration that it had no liability or duty to indemnify Urban or pay Augusta. Harbor asserted that Urban's claim for coverage was excluded by the work performed provision. Urban counterclaimed alleging breach of contract, negligence, and violations of Texas's Insurance Code and Deceptive Trade Practices Act.

Harbor moved for partial summary judgment on the coverage issue, contending that the work performed clause excluded coverage for the arbitration award. Urban responded by submitting evidence to establish mutual mistake in the formation of the renewal policy

---

[5]Urban moved to stay the state court action pending arbitration pursuant to an arbitration clause in the construction contract.

contract. According to Urban's evidence, the policy should have been renewed on the same terms as the previous policy, including an endorsement modifying the work performed clause.

Harbor did not contradict the evidence of mutual mistake. Harbor admitted that the parties intended to modify the work performed clause. Harbor maintained, however, that Urban's reliance on mutual mistake was an effort to reform the contract. Relying upon the statute of limitations for reformation actions, Harbor claimed that this effort was time barred.

The district court granted Harbor's motion for partial summary judgment on July 8, 1991. The court did not reach the statute of limitations issue. Instead, the court held that it could not consider any extrinsic evidence--even that offered to prove mutual mistake. Confining its inquiry to the terms of the renewal policy as delivered, the court held that the work performed clause denied coverage. Finding that the exclusion of coverage gave Harbor a reasonable basis for denying Urban's claim, the court also granted judgment in Harbor's favor on Urban's claims for negligence and breaches of the duties of good faith and fair dealing.

Harbor then sought summary judgment on Urban's remaining statutory claims. Harbor asserted that those claims were time barred, because the applicable statute of limitations began to run when Urban became aware of the omission of the endorsement modifying the work performed clause. Urban responded that the limitations period did not begin to run until Harbor denied coverage in 1989. Agreeing with Harbor, the district court held

6

the statutory claims were time barred.  The court found that Urban should have discovered that the renewal policy lacked the desired endorsement when delivered, or at latest when Augusta sued Urban in 1985.  The court granted Harbor's supplemental motion and entered its final judgment, disposing of the entire case, on February 28, 1992.  Urban filed a timely notice of appeal.

We review the granting of summary judgment de novo, applying the same criteria as the district court.  Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992).  "Summary judgment is proper only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'"  Harbor Insurance Co. v. Trammell Crow Co., 854 F.2d 94, 98 (5th Cir. 1988)(quoting Fed. R. Civ. P. 56(c)).  We consider all of the facts contained in the pleadings, depositions, admissions, answers to interrogatories, affidavits, and the inferences to be drawn therefrom in the light most favorable to the non-moving party.  Weyant v. Acceptance Ins. Co., 917 F.2d 209, 212 (5th Cir. 1990).  We review the district court's interpretation of an insurance policy de novo.  Heinhuis v. Venture Associates, Inc., 959 F.2d 551, 553 (5th Cir. 1992).

Our review is not limited to the district court's analysis. A grant of summary judgment may be affirmed on a legal basis not ruled upon below.  "We may affirm even in situations in which the district court's ruling was incorrect, as long as the result was proper."  Texas Refrigeration Supply, Inc. v. Federal Deposit Ins. Corp., 953 F.2d 975, 980 (5th Cir. 1992).

Urban contends that the renewal policy should not be enforced as written due to mutual mistake. Harbor has admitted that the delivered policy did not reflect the agreement of the parties. Nevertheless, the district court held that the policy could not be reformed to correct the mutual mistake, because the policy was an integrated document that could not be altered by parol evidence. Furthermore, the district court held that as a matter of law an insured is bound by the terms of a policy when he accepts the policy.

We disagree with these rulings. As we see it, under Texas law, reformation requires an original agreement followed by a mutual mistake made in reducing the original agreement to writing. Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379 (Tex. 1987). Reformation is allowed even when a written contract purports to be completely integrated. See Restatement (Second) of Contracts § 155, comment a (1981).[6] "[T]he parol evidence rule does not preclude such a showing of mistake." Id. Moreover, the insured's failure to read the policy does not bar correction of the mistake. Aetna Ins. Co. v. Paddock, 301 F.2d 807, 811 (5th Cir. 1962)(Texas law). Texas adopted the majority rule that does not require the insured to examine the delivered policy and permits him to rely upon the assumption that the agreement was expressed in the writing. Firemen's Fund Indemnity Co. v. Boyle Gen'l Tire Co., 392 S.W.2d 352, 355 (Tex. 1965).

---

[6]This section was cited with approval by the Texas Supreme Court in Forderhause, 741 S.W.2d at 379.

Harbor's admission equates to an admission of mutual mistake. Both parties agreed that the renewal policy would contain the terms of the existing policy, including its endorsement modifying exclusion (e). Harbor does not contend that reformation is barred by the parol evidence rule or Urban's acceptance of the policy. Harbor urges us to affirm the grant of summary judgment on the basis that Urban's request for reformation is barred by the statute of limitations.

The parties argue that different four-year statutes of limitations apply that began to run on different dates. Urban contends that its suit for damages is governed by the statute of limitations for actions on debts. Tex. Civ. Prac. & Rem. Code § 16.004(a)(3). This limitations period arguably runs from Harbor's denial of coverage. Harbor, on the other hand, maintains that the statute of limitations for reformation actions applies. Tex. Civ. Prac. & Rem. Code § 16.051. It is well settled in Texas that the limitations period for instrument reformation is subject to the discovery rule. See, e.g., Tucker v. Atlantic Richfield Co., 787 S.W.2d 555, 558 (Tex. App.--Corpus Christi 1990, writ denied). The discovery rule provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. Willis v. Maverick, 760 S.W.2d 642, 644 (Tex. 1988). Regarding reformation, the limitations period begins to run from the time the party seeking reformation discovered, or should have discovered, the error or omission in the instrument. Tucker, 787

S.W.2d at 558. On summary judgment, the movant asserting limitations as a defense must negate the discovery rule by establishing that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of his injury. Burns v. Thomas, 786 S.W.2d 266 (Tex. 1990).

Urban insists that the statute of limitations for reformation actions does not apply, because it does not seek the affirmative relief of reformation. Urban argues that the relief it seeks is enforcement of the parties' intended agreement. Although Urban's breach of contract claim requires that the policy be interpreted in light of the proof of mutual mistake, Urban reasons that interpretation in an enforcement suit differs from praying for relief in the form of reformation.

We are not persuaded by this reasoning. The fact that intended agreements may be enforced without a prior action for reformation is not dispositive. See Republic Ins. Co. v. Silverton Elevators, Inc., 493 S.W.2d 748, 754 (Tex. 1973) (holding that intended agreement may be enforced upon proof of mutual mistake without a formal reformation proceeding). This rule recognized that the merger of law and equity permitted actions for reformation and enforcement after a mutual mistake to be collapsed into a single lawsuit. Regardless of the label placed upon that lawsuit, a party asserting mutual mistake seeks relief in the substance, if not necessarily the form, of reformation. Texas courts reflect this reality by applying the rules regarding the limitations of reformation actions to the assertion of mutual mistake as a

10

defense.  See Snellings v. Snellings, 482 S.W.2d 707, 709 (Tex. Civ. App.--Waco 1972, writ ref'd n.r.e.).  Following that lead, we hold that the statute of limitations may bar the assertion of mutual mistake under the circumstances presented here.

Collier Cobb was Urban's agent for procuring insurance.  John Irwin testified that Collier Cobb reviewed policies upon arrival to check for errors.  It followed that procedure when Harbor delivered the renewal policy in May 1981.  Irwin was made aware of the endorsement's omission.  He made a note referring to the omission on Collier Cobb's copy of a May 22, 1981, letter to Urban.  Urban notes that the record does not disclose the date that Irwin learned of the omission, but otherwise does not point to evidence contradicting these facts.

Harbor has the burden of establishing when the limitations period began to run.  Citing Irwin's testimony, Harbor demonstrated that Urban or its agent, Collier Cobb, had actual knowledge of the omission in 1981.  In the alternative, Harbor argues that with reasonable care and diligence, Urban should have discovered the omission of the endorsement when sued by Augusta in February 1985. At the latest, therefore, the limitations period expired in February 1989.  Urban did not assert its right to reformation until after this litigation commenced in September 1989.

Urban suggests several avenues of escape from limitations. All stem from the public policy of protecting insureds from language in insurance policies of which they are not aware. Because Urban had actual knowledge of the omission, none of these

11

principles are of help to it. For example, Urban asserts the rule that insurers have a duty to call to the insured's attention any changes in the coverage or conditions of a renewed policy. See generally Annotation, "Insurance Company as Bound by Greater Coverage in Earlier Policy Where Renewal Policy is Issued Without Calling to Insured's Attention a Reduction in the Policy Coverage," 91 A.L.R.2d 546 (1963) (collecting cases); see also Liverpool & London & Globe Ins. Co. v. Swann, 382 S.W.2d 521, 522 (Tex. Civ. App.--Beaumont 1964, no writ)(noting that in absence of contrary agreement, renewal is presumably upon same terms as original policy). As noted above, Texas law does not require the insured to examine the delivered policy. Firemen's Fund Indemnity Co. v. Boyle Gen'l Tire Co., 392 S.W.2d 352, 355 (Tex. 1965).

This case does not involve the operation of policy terms of which the insured was ignorant. Through Collier Cobb, Urban gained actual knowledge that the policy did not contain the endorsement modifying exclusion (e). Urban evidently assumed that the terms of the intended agreement were enforceable,[7] but took no legal steps to ensure their enforceability until 1989. The question presented

_____

[7]The testimony of E.A. Anderson, a claims executive with 34 years of insurance industry experience, indicates that this assumption was not completely unreasonable. He state that it was the industry's custom and practice to provide coverage on the basis of intended agreements as shown by underwriting files, regardless of the actual policy language. Nonetheless, we are constrained by the holdings of the Texas courts, which state that the statute of limitations for reformation begins to run from the actual discovery of the error or omission. Accrual of the cause of action "does not await the plaintiff's recognition that he has grounds for a lawsuit." Arabian Shield Development Co. v. Hunt, 808 S.W.2d 577, 583 (Tex. App.--Dallas 1991, writ denied).

12

is whether Urban may seek reformation eight years after learning that the policy did not conform to the intended terms. By the statute of limitations, the answer is no. The district court did not err in refusing to enforce the terms of the omitted endorsement.

For the first time on appeal, Urban asserts the alternative argument that the unmodified policy Harbor delivered provides coverage. The unmodified terms of the work performed clause, by themselves, would exclude coverage. See Eulich v. Home Indemnity Co., 503 S.W.2d 846, 849 (Tex. Civ. App.--Dallas 1973, writ ref'd n.r.e.); T.C. Bateson Constr. Co. v. Lumbermens Mutual Casualty Co., 784 S.W.2d 692, 696 (Tex. App.--Houston [14th Dist.] 1989, writ denied). Urban contends that those terms are not operative due to an ambiguity arising from the umbrella policy's incorporation of provisions of Aetna's primary policy. Generally, this court will not rule on issues not presented to the district court below. Capps v. Humble Oil & Refining Co., 536 F.2d 80, 82 (5th Cir. 1976). We will not address the merits of this argument.

In addition to suing for breach of contract, Urban alleged that Harbor violated its duties of reasonable care, good faith, and fair dealing. The district court held that because Harbor had a reasonable basis for denying coverage it did not breach its duty of good faith and fair dealing by refusing to pay Urban's claim or to settle with Augusta. Later, the district court ruled that Urban's remaining statutory claims were time barred.

13

A cause of action for breach of the duty of good faith and fair dealing occurs when there is no reasonable basis for the denial or delay of payment of a claim or when an insurer fails to determine whether there is any reasonable basis for the denial or delay. Arnold v. National Cty. Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987). Whether there is a reasonable basis for denial is judged by the facts known to the insurer at the time the claim was denied. Automobile Ins. Co. of Hartford v. Davila, 805 S.W.2d 897, 903 (Tex. App.--Corpus Christi 1991, writ denied)(citing Viles v. Security Nat'l Ins. Co., 788 S.W.2d 566, 567 (Tex. 1990)). We assume without deciding that the duty of good faith and fair dealing exists on the part of an excess carrier in a commercial context. See Beaumont Rice Mill, Inc. v. Mid-American Indemnity Ins. Co., 948 F.2d 950, 952 (5th Cir. 1991)(making same assumption).

We agree with the district court's conclusion that Harbor possessed a reasonable basis for the denial of Urban's claim. We note that the absence of policy coverage, by itself, does not foreclose recovery for the breach of the duty of good faith and fair dealing. See First Texas Sav. Ass'n v. Reliance Ins. Co., 950 F.2d 1171, 1179 (5th Cir. 1992); see also Viles, 788 S.W.2d at 567. In this case, Harbor reserved its rights under the policy in April 1989 and denied coverage on September 1, 1989. The written terms of the policy, containing the unmodified work performed clause, provided a reasonable basis for this denial of coverage.

We affirm the remainder of the district court's rulings.

14

Urban's negligence claim fails because Harbor had a reasonable basis for denying coverage and therefore for refusing to settle Augusta's suit. Urban's misrepresentation claims under the Texas Insurance Code and DTPA are time barred due to its actual knowledge of the omissions in 1981. Aside from assertions in the argument of counsel, Urban has not shown that Harbor made any representations regarding coverage after delivering the renewal policy.

AFFIRMED.