# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 18, 2013

No. 12-40186

Lyle W. Cayce
Clerk

MATERIALS EVALUATION AND TECHNOLOGY CORPORATION,

Plaintiff-Appellant,

v.

MID-CONTINENT CASUALTY COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CV-740

Before STEWART, Chief Judge, and DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Materials Evaluation and Technology Corporation ("METCO") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Mid-Continent Casualty Company ("Mid-Continent"). The district court ruled that endorsement "ML 1190," the Employers' Liability Exclusion Endorsement, precluded Mid-Continent's duty to defend under a commercial general liability insurance policy. For the following reasons, we AFFIRM the district court's grant of summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40186

# I.

## A. *Insured-Insurer Relationship between METCO and Mid-Continent*

METCO first purchased a commercial general liability policy from Mid-Continent in 1997 and annually renewed its coverage through at least 2004. Of particular relevance to this case are the 2002 and 2003 policies.

The 2002 policy, which was effective from July 18, 2002 to July 18, 2003, provided, *inter alia*, for an Employer's Liability exclusion (the "Exclusion"). The Exclusion, which is listed in Section 1, subsection 2(e), of the Coverage A Bodily Injury and Property Damage Liability of the 2002 policy provide in relevant part:

> 2. This insurance does not apply to:
>
> (e) Employer's Liability
> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured business;
> . . .
>
> This exclusion applies:
> (1) Whether the insured may be liable as an employer or in any other capacity; and
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract."

Therefore, the Exclusion did not apply to a "contract or agreement . . . under which [METCO] assume[s] tort liability of another party to pay for 'bodily injury' . . . ."

The effective dates for the 2003 policy were July 18, 2003 to July 18, 2004. The coverage for the 2003 policy also contained the same Exclusion as the 2002

policy. However, the 2003 policy differed from the 2002 policy because the 2003 policy included the Employers' Liability Exclusion Endorsement (the "Endorsement"). The Endorsement provides in relevant part:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> . . .
> This insurance does not apply:
> . . .
> 2. To any liability or obligation for which any "insured," or any company as its insurer, may be held liable to any person or entity, including any other "insured," as a result of "bodily injury" to any employee sustained in the course of employment or supervision by an "insured"; or
>
> . . .
> 4. To any liability of any "insured" to defend, indemnify, share payments or damages with, or repay anyone on account of any obligation arising out of "bodily injury" to any employee of the nature specified in . . . 2 above.
>
> This exclusion shall be effective regardless of whether the liability or obligation is asserted directly or indirectly against any "insured" as an employer, contractor, subcontractor, third party defendant, or in any other capacity.
> . . .
> All Other Terms and Conditions Remain Unchanged.

Accordingly, while the 2002 policy provided for coverage arising from an employee's injuries if liability arose from a third-party contractual relationship, the 2003 policy excluded this liability from coverage.

## B.   *METCO-DuPont Agreement and Bertrands' Bodily Injury Claims*

METCO performs materials testing for clients at various industrial sites in the Gulf Coast region, which requires METCO employees to work at these

sites. In February 2003, METCO and E.I. du Pont de Nemours and Company ("DuPont") executed an agreement ("DuPont Agreement") whereby METCO agreed to provide various testing services at a DuPont facility in Beaumont, Texas. The DuPont Agreement included an indemnity clause, which required METCO and DuPont to "indemnify, defend and hold harmless the other Party" for various types of liability.

In March 2004, two of METCO's employees, Christopher and Jacqueline Bertrand, sustained bodily injuries while working at the DuPont facility. The Bertrands filed suit against DuPont in state court, which DuPont settled. Pursuant to the DuPont Agreement's indemnity clause, DuPont demanded reimbursement from METCO for fees and litigation expenses in defending and settling the Bertrands' claims. METCO refused to indemnify DuPont, and on June 29, 2010, DuPont sued METCO for breach of contract. METCO subsequently tendered the DuPont suit to its insurance carrier, Mid-Continent, for defense and indemnity.

## C. *Mid-Continent's Denial of Coverage and METCO and Mid-Continent's Lawsuit*

In July 2010, Mid-Continent denied METCO's request to defend, claiming that METCO's coverage was excluded under the provisions of the Coverage A Bodily Injury and Property Damage Liability insuring agreement under the 2003 policy. METCO then filed the instant action in state court seeking a declaratory judgment that Mid-Continent had a duty to defend METCO in the lawsuit brought by DuPont. METCO also advanced claims for breach of contract, breach of the duty of good faith and fair dealing, reformation of the insurance policy due to mutual mistake or fraud, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. The action was removed to federal court on the basis of diversity jurisdiction. Mid-Continent subsequently asserted the

No. 12-40186

Endorsement as an additional ground in refusing to defend METCO in an amended answer.

In the district court, Mid-Continent filed a motion for summary judgment. METCO filed a cross-motion for partial summary judgment, claiming, *inter alia*, that the terms of the 2002 policy, and not the 2003 policy, control Mid-Continent's duty to defend because Texas law presumes that a policy renewal is made on the same terms of the original policy unless there is evidence of a contrary agreement. The magistrate judge ruled that the 2003 policy controls because the Bertrands' injuries occurred during the effective dates of that policy. The magistrate judge then applied the eight-corners rule[1] and concluded that the Endorsement precluded Mid-Continent's duty to defend METCO's claims and that there was no evidence supporting METCO's remaining claims. The district court adopted the magistrate judge's report and recommendation and granted summary judgment in favor of Mid-Continent. METCO now appeals.

## II.

We review the district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view all facts and evidence in the light most favorable to the non-moving party when considering a motion for summary judgment. *Dameware Dev., L.L.C. v. Am. Gen. Life Ins. Co.*, 688 F.3d 203, 206-07 (5th Cir. 2012) (citation omitted). In this diversity jurisdiction

---

[1] Under Texas's "eight corners" rule, "the scope of an insurer's duty to defend against a lawsuit is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012) (citing *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)).

No. 12-40186

action, we apply the substantive law of Texas.  *Coe v. Chesapeake Exploration, L.L.C.*,  695 F.3d 311, 316 (5th Cir. 2012) (citation omitted).

## III.

### A.

On appeal, METCO does not challenge the district court's conclusion that the Endorsement bars coverage of the DuPont lawsuit.  Rather, METCO argues that the 2003 policy is on the same terms as the 2002 policy because a policy renewal is on the same terms as the original; thus, according to METCO, the Endorsement is not enforceable.

We conclude, however, that the 2003 policy is valid and enforceable as written.  The Bertrands were injured in March 2004, and the 2003 policy was effective from July 18, 2003 to July 18, 2004.  Thus, the 2003 policy is the relevant one for determining METCO's coverage.  Further, the 2003 policy's language, as previously stated, specifically negates Mid-Continent's duty to defend METCO.[2]  Therefore, under general contract principles, we conclude that METCO is bound by the Endorsement included in the 2003 policy.  *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) (noting that the interpretation of an insurance contract is guided by general contract principles of contract construction and that the primary goal is to examine the policy language to ascertain the parties' intent).

### B.

METCO's asserted bases for relief in reliance on *Liverpool & London & Globe Insurance Co. v. Swann*, 382 S.W.2d 521 (Tex. Civ. App.–Beaumont 1964, no pet.), *Harbor Insurance Co. v. Urban Construction Co.*, 990 F.2d 195 (5th Cir.

---

[2] Moreover, we note Mid-Continent does not have a duty to indemnify because the Endorsement specifically precludes coverage for "any liability of any insured to indemnify . . . anyone on account of any obligation arising out of 'bodily injury' to any employee . . . [sustained in the course of employment]."

1993), and *Indiana & Ohio Live Stock Insurance Co. v. Keiningham*, 161 S.W. 384 (Tex. Civ. App.–Dallas 1913, writ ref'd) are unavailing.

In *Liverpool*, the Texas Court of Appeals addressed whether an insured could recover under his fire insurance policies for fire damage to his store where the insurance agent sent a letter to the insured offering to renew the policy based on the request of the insured's wife.  382 S.W.2d at 522.  However, the agent failed to issue the renewal policy, and the policy expired one day prior to the fire.  *Id.*  In holding that the insurance agent's letter constituted a policy renewal offer on the same terms as the original policy, the *Liverpool* court first noted that:

> The law is well settled in [Texas] that an insurance company, through its duly authorized agent, may contract by parol for the renewal of [an] insurance policy; and, in the absence of agreement to the contrary, the presumption is that the renewal is upon the same terms, conditions, and amount as provided in the original policy.

*Id.* (citation and internal quotation marks omitted).

The matter *sub judice* is distinguishable from *Liverpool*.  Mid-Continent issued the 2003 policy, which contained the Endorsement, a condition varying the terms of the 2002 policy.  We thus conclude that the 2003 policy was clearly an "agreement to the contrary," and *Liverpool*'s presumption is not applicable here.

METCO next contends that it was excused from reading the 2003 policy because "Texas adopted the majority rule that does not require the insured to examine the delivered policy and permits him to rely upon the assumption that

No. 12-40186

[a renewal policy is on the same terms as the original.]" In support of this argument, METCO cites to *Harbor Insurance*.[3]

In *Harbor Insurance*, we addressed reformation of an insurance policy under the majority rule where the insurer and insured committed a mutual mistake. 990 F.2d at 199-200. In that case, the insurer, Harbor Insurance and the insured, Urban, had a prior agreement to renew the policy on the same terms as the previous year's policy, which included a modifying endorsement. *Id.* at 197. Due to the parties' mutual mistake, the modifying endorsement was not attached to the renewal policy. *Id.*

Several years later, a construction defect action was commenced against Urban, which resulted in an arbitration award against Urban. *Id.* at 198. Urban then demanded indemnification by Harbor Insurance for the award. *Id.* Harbor Insurance denied the claim and sought a declaratory judgment that it did not have a duty to indemnify Urban. *Id.* Harbor Insurance admitted

---

[3] Although not extensively argued by METCO, METCO cites *Fireman*'s *Fund Indemnity Co. v. Boyle General Tire Co.,* 392 S.W.2d 352 (Tex. 1965) in support of the proposition that it did not have a duty to examine the policy. In *Boyle*, an insurance agent agreed to the insured's request to provide coverage for the insured's employees but the insurance agent did not include the employees under the policy. *Id.* at 355. Two employees subsequently stole money from the business. *Id.* Boyle did not read the policy until several years after it was issued and sought reformation of the policy. *Id.* The Texas Supreme Court explained that "an insured who accepts a policy without dissent, is presumed to know its contents, but the presumption may be overcome by proof that he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed he had correctly drawn it." *Id.* (citation and internal quotation marks omitted). The *Boyle* court therefore allowed reformation of the policy. *Id.* at 358.

Post-*Boyle* cases have applied *Boyle's* presumption where the policy did not comply with a prior agreement between the insurance agent and the insured. *See Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex. 1976) (concluding that an insured overcame the *Boyle* presumption when a lienholder, which had a duty similar to an insurance agent, indicated that it would procure fire coverage of the property and the lienholder failed to fully insure the property); *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 479-81 (Tex. App.–Corpus Christi 2008, pet. denied) (concluding that the insured restaurant owners overcame *Boyle's* presumption where the insured informed the agent prior to the agent's procurement of the policy that it wanted to be covered for tainted food, and the procured policy contained a communicable disease exclusion which excluded coverage of customers' Hepatitis A claims)

These cases are distinguishable from the present matter. *Boyle, Colonial Savings, and Kloesel* all involved the insured not examining the policy on the basis that the policies were intended to protect the insured from the covered risk based on prior communications with an insurance agent or a party that had a similar duty as an insurance agent.

however, that the subsequently delivered written policy "did not reflect the agreement of the parties" because it omitted the modifying endorsement that was included in the prior policy. *Id.* at 199. Notwithstanding this admission, the district court ruled that "as a matter of law an insured is bound by the terms of a policy when he accepts the policy.*" Id.* In disagreeing with the district court, we noted that the majority rule "does not require the insured to examine the delivered policy and permits him to rely upon the assumption that the agreement was expressed in the writing." *Id.* at 200. Accordingly, we held that there was a mutual mistake, but we declined to allow for reformation of the policy because the statute of limitations expired on Urban's claim. *Id.* at 201. We therefore affirmed the district court's decision. *Id.* at 202.

Contrary to what METCO argues, *Harbor Insurance* does not stand for the blanket proposition that a policyholder has a right to assume that "a renewal policy is on the same terms as the original." *Harbor Insurance* specifically dealt with the issue of reformation under the majority rule where the parties committed a mutual mistake based on a prior agreement. *Id.* at 199-200. In the instant case, there is no prior agreement supporting the proposition that METCO and Mid-Continent agreed to not include the Endorsement in the 2003 policy but that the parties, through mutual mistake, subsequently included the Endorsement in the 2003 policy anyway. Therefore, we conclude that the facts of this case are misaligned with *Harbor Insurance*, and we decline to extend our holding in *Harbor Insurance* to the facts here.

For similar reasons, METCO's reliance on *Keiningham* is misplaced. In *Keiningham*, the insured sent an application to his insurer requesting a renewal of his current livestock insurance policy. 161 S.W. at 384. The insurer responded by delivering a policy which was "represented to be in compliance with his application" but which in fact included an additional restrictive provision. *Id.* The insured failed to read the policy and did not discover the

restrictive provision until he attempted to make a claim under the policy. *Id.* at 384-85. The *Keiningham* court noted that "the provision in the policy is in conflict with the application" and held that the insured was not bound by the restrictive provision. *Id.* at 385. The court stated, "[t]he application was one apparently prepared and printed by [the insurer] for its private use and if it intended to ingraft upon it some new provision after [the insured] had signed same, some notice of such intention must have been given [to the insured] to bind him thereto." *Id.* at 386.

We also conclude that METCO's argument under *Keiningham* is unpersuasive because there is no evidence in the record that METCO completed a policy renewal application or otherwise requested that the 2003 renewal policy be issued on the same terms as the 2002 policy.

*Liverpool*, *Harbor Insurance,* and *Keiningham* are clearly distinguishable from the instant case, and we decline to view them as supportive of METCO's contention.

C.

METCO next contends that Mid-Continent did not provide "actual notice" that the Endorsement was included in the 2003 policy. By way of several affidavits submitted by administrative officers and its insurance agent, METCO avers that it was unaware that Mid-Continent included the Endorsement. METCO cites *Automobile Insurance Co. v. United Electric Service Co.,* 275 S.W.2d 833 (Tex. Civ. App.–Fort Worth 1955, writ ref'd n.r.e.), and four cases from other jurisdictions in support of its notice argument.[4]

The court in *Automobile Insurance* concluded that an insured did not receive sufficient notice of a co-insurance endorsement even though the insurer delivered "ten single page endorsements, three simple credit memoranda and

---

[4] *Gov't Emps. Ins. Co. v. United States*, 400 F.2d 172 (10th Cir. 1968), *Whiteside v. New Castle Mut. Ins. Co.,* 595 F. Supp. 1096 (D. Del. 1984); *Campbell v. Ins. Serv. Agency,* 424 N.W.2d 785 (Minn. Ct. App. 1988); *N. River Ins. Co. v. Young,* 453 S.E.2d 205 (N.C. Ct. App. 1995)

two renewal policies" to the insured's office manager. 275 S.W.2d at 836. *Automobile Insurance,* however, primarily concerned the reformation of an insurance policy based on mutual mistake. Here, there is no mutual mistake.

In the instant case, the policy declaration within the 2003 policy contained the following language with respect to terms and changes made to the policy. The Policy Declaration provided: "IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY." Shortly after this language, the Endorsement (ML 1190) is listed under the heading of "Form(s) and Endorsement(s) made a part of this policy at this time." Additionally, the page in which the Endorsement is discussed conspicuously states, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY," and "[t]his endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART. . . ."

By receiving the proposed 2003 policy which included notification of the inclusion of the Endorsement, METCO had sufficient notice that the Endorsement was included in the 2003 policy.

### D.

METCO further asserts there is evidence of fraud in this case. METCO argues that Mid-Continent committed fraud by claiming that the 2003 policy was a "renewal," thereby misrepresenting the terms of the 2003 policy when it included the Endorsement because, by definition, a renewal is on the same terms as the original policy.

Under Texas law, the party asserting fraud is required to prove:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a

11

No. 12-40186

positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citation omitted).

To support this claim, METCO specifically argues that: (1) Mid-Continent's representation was material; (2) Mid-Continent knew the representation to be false; (3) Mid-Continent intended METCO to sign the 2003 policy on the belief that it was a renewal of the 2002 policy terms; (4) METCO purchased the renewal policy; (5) METCO relied on Mid-Continent's representation; and (6) METCO was injured when Mid-Continent denied coverage based on the Endorsement. In the alternative, METCO avers that there is a conflict between the terms of the Endorsement and the Exclusion, and that the Exclusion controls.

The district court did not address METCO's reformation claim on the basis of fraud because METCO failed to object to the magistrate's report; therefore, our review is limited to plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Under plain error review, the appellant must show (1) an error; (2) that is clear or obvious; and (3) that affected the appellant's substantial rights. *Baisden v. I'm Ready Prods. Inc.*, 693 F.3d 491, 506 (5th Cir. 2012) (citation omitted).

Although the 2003 policy is a renewal policy, it cannot be characterized as a renewal on the same terms as the 2002 policy when considered in light of other language in the 2003 policy. *See State Farm Lloyds,* 315 S.W.3d at 527 ("[The court] must read all parts of the contract together, giving effect to each word,

12

clause, and sentence, and avoid making any provision within the policy inoperative."). The policy declaration page and the Endorsement page explicitly provide language notifying the insured that the Endorsement changed the terms of the 2002 policy. Accordingly, Mid-Continent did not make a material representation that the 2003 policy was on the same terms as the 2002 policy as argued by METCO. Therefore, METCO has not demonstrated any error, plain or otherwise. Furthermore, there is no conflict between the Endorsement and the Exclusion because the Endorsement controls. *TIG Ins. Co. v. N. Am. Van Lines, Inc.*, 170 S.W.3d 264, 271 (Tex. App.–Dallas 2005) (noting that when there is a conflict between an endorsement and the policy the endorsement generally supersedes conflicting printed terms contained in the general policy.)

Accordingly, the Endorsement contained in the 2003 policy is enforceable, and METCO's attempts to attack the Endorsement fail.

## IV.

METCO finally contends that the district court erred in dismissing its claims relating to breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive and Trade Practices Act and the Texas Insurance Code. Because we have concluded that Mid-Continent did not have a duty to defend or indemnify METCO, these claims fail.

## V.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

13